# CHARLESTON.

MONT BONAR v. BALTIMORE & OHIO RAILROAD CO.

Submitted September 12, 1922. Decided September 19, 1922.

1. RAILROADS—*Travelers' Failure to Stop Not Negligence Per Se.*

   It is not negligence per se in all cases for a traveler upon a public road or street, on approaching a railroad crossing, not to stop, as well as look and listen before attempting to cross the track. (p. 465.)

2. SAME—*Negligence of Traveler Generally for Jury.*

   Under some circumstances, whether one has been negligent in failing to stop may be a question of law to be decided by the court, but generally it is presented as a mixed question of law and fact, to be submitted to the jury. (p. 456.)

3.   SAME—*Contributory Negligence of Automobile Driver, Observing Watchwoman's Conduct, Held for Jury.*

Plaintiff, approaching a railroad crossing in an automobile, when about 40 or 50 feet from the track momentarily saw an engine on the track between 300 and 400 feet from and headed away from the crossing, but did not know in which direction it was moving, and his view thereafter was obstructed. He looked and listened, observed no danger, but did not stop. He saw the railroad watchwoman cross defendant's tracks with a stop signal in her hand, and her conduct indicated that the engine was not dangerously near. Whether, under such circumstances, he might reasonably rely upon her conduct and attempt to pass over the crossing was a question for the jury, and not one of law for the court.   (p. 456.)

Error to Circuit Court, Marshall County.

Action by Mont Bonar against the Baltimore & Ohio Railroad Company. From an order setting aside a verdict for plaintiff, he brings error.

*Reversed, and judgment for plaintiff on verdict.*

*Martin Brown,* for plaintiff in error.

*Frank W. Nesbitt* and *A. L. Hooton,* for defendant in error.

MEREDITH, JUDGE:

Plaintiff sued to recover damages to his automobile occasioned by collision with defendant's railroad engine and tender at a grade crossing in Benwood. The jury returned a verdict in his favor, and the court, on motion of defendant, set it aside. Plaintiff brings error, asks this court to set aside the judgment and enter judgment for him on the verdict.

The collision occurred where Eighth Street (sometimes called Ninth Street in the record) crosses defendant's two tracks at grade. These tracks run north and south. This street extends from the Ohio river, crossing, in order, Water Street, Main Street and McMechen Street; then east, crossing defendant's tracks, then turns to the right in a southeasterly direction, making an acute angle with the railroad

tracks, and further on intersects with Marshall Street. Eighth Street, as it approaches the crossing, is on a grade, though not steep, but the amount is not shown. On the north side of the street is a building known as the "Ball House" belonging to the Wheeling Steel and Iron Company. It is a one-story structure; its frontage on the street does not appear, but it obliquely faces the railroad tracks, a distance of 110 feet, the south end being about 52 feet and the north end about 40 feet from the tracks. Also on the north side of the street and about 38 feet from the "Ball House" is the "Watch-House" of defendant, which is about 7 by 9 feet. This is a one-story structure. It stands seven feet west of the tracks. North of the "Watch-House" and along the tracks, plaintiff shows there were piles of cross-ties for a considerable distance, that were five or six feet high. On north of them at a distance of 250 feet stands a two story frame dwelling house, which is about twenty-six feet from the tracks. Plaintiff claims his view of the tracks to the north was obstructed by these several buildings and structures as he approached the crossing. He was accompanied by Beryl Hawes, and both say they were going at from six to eight miles per hour, that when some considerable distance away, they saw defendant's watchwoman go across the tracks with a "stop" sign in her hand. About this time Hawes told Bonar to "watch out" and Bonar replied that he was watching. They also listened and looked both north and south. As they passed the "Ball House" plaintiff saw beyond the piles of cross-ties, some 300 or 400 feet away, so he says, an engine headed toward Wheeling, that would be northward and away from the crossing. He could not tell which way it was moving, but supposed it was going in the direction it was headed; that the watchwoman gave him no signal to stop, so he proceeded on his way. As the automobile passed the "Watch-House," plaintiff then discovered the engine with its tender backing down upon him and by promptly swerving his automobile to the right a more serious accident was averted. As it was, the machine was thrown off the track into a sand pile and was

demolished. Plaintiff and Hawes testify that no whistle was blown nor bell rung to warn of approaching danger. They both swear they looked and listened, both for any approaching train and for a signal from the watchwoman. They swear she gave no signal; she swears she did, but defendant's engineer swears she gave no signal until the tender was within ten or fifteen feet of the crossing, when it was too late for him to stop. It was doubtless too late then for the plaintiff to stop.

Whether the whistle was blown, the bell was rung, or signal was given were questions for the jury.

The only question involved in this case is whether, as a matter of law, the plaintiff was guilty of contributory negligence. The evidence shows that he and his companion both looked and listened, but did not stop. The court, at defendant's instance, instructed the jury that if they found from the evidence that plaintiff drove upon defendant's tracks without first *stopping*, looking and listening, they should find for defendant. The plaintiff failed to stop, and it was doubtless for this reason that the court set aside the verdict. The defendant's counsel claims that the fact that plaintiff did not stop, as well as look and listen, makes him guilty of contributory negligence, and for authority cite us to the case of *Cline* v. *McAdoo*, 85 W. Va. 524, 102 S. E. 218. The first point of the syllabus in that case says: "As many times decided, it is the duty of a traveler on a public highway, on approaching a railroad crossing, to stop, look and listen, without which, if injured, he will be guilty of contributory negligence." This language is perhaps broader than is warranted by the facts in that case. There the plaintiff not only failed to stop, but he did not look or listen. If he looked at all, he looked in but one direction. This court has never held that there is an absolute duty, under any and all circumstances, for a traveler to stop, look and listen for approaching trains, but his failure to do so is a circumstance for the jury to consider in determining the degree of care exercised by him. There may be cases where his failure to stop, look and listen will in itself make

him guilty of contributory negligence, and the Cline case furnishes such an instance; but the opinion in that case shows that other facts and circumstances may be shown so as to excuse the plaintiff from stopping, looking and listening, or at least such as will carry the case to the jury on whether the plaintiff did or did not act under the circumstances as a reasonable and prudent man would have done; in other words, whether plaintiff was guilty of contributory negligence is a question for the jury. The Cline case when properly interpreted in no wise changes the rule laid down in *City of Elkins* v. *Western Maryland Ry. Co.*, 76 W. Va. 733, 86 S. E. 762, 1 A. L. R. 192, which says:

> "It is not negligence per se in all cases for travelers upon a public street or road, on approching a railroad crossing, not to stop, as well as to look and listen, before attempting to cross the track. Whether one has been negligent in failing to stop is generally presented as a mixed question of law and fact to be submitted to the jury, and not as one of law for the judgment of the court."

The facts in that case in many respects are similar to those in this. The plaintiff's servants there only "looked and listened," they did not stop; so in this case. There they claimed no whistle was blown, no bell sounded; so here. It was held in that case that the trial court was not justified in holding as a matter of law that the drivers of plaintiff's team were guilty per se of contributory negligence. What is in that case called the "hard and fast rule of Pennsylvania,"—the rule that under any and all circumstances a traveler approaching a railway crossing must stop, look and listen, or be held guilty of contributory negligence, is not only not adopted, but on the contrary, rejected. That question is fully discussed there, and needs no further discussion here.

But there is one circumstance in this case not found in the case of *City of Elkins* v. *Western Maryland Ry. Co.* In this case the defendant maintained a watchwoman at the crossing. It was her duty to warn travelers using the cross-

ing and to flag trains. Whether she did warn the plaintiff was a question for the jury. But defendant's counsel contend that inasmuch as plaintiff saw the engine some 300 or 400 feet up the track, headed north and away from the crossing, he had no right to rely upon the watchwoman for a warning signal; that it was his duty to stop and ascertain for himself whether the engine was backing toward the crossing, since from his position he could neither see nor hear it, after a momentary view when he passed the "Ball House," and that his failure to stop makes him guilty of contributory negligence. We can not as a matter of law so hold. He saw the watchwoman with the "stop" sign in her hand cross the tracks ahead; as she did so her back was toward him. He says that after she got across she stood with her back toward him and was looking upward at another woman standing on a concrete wall above her. He knew that her duty was to warn travelers of approaching trains, and that she was in a position to see whether the engine was backing down toward the crossing. As he approached the crossing the piles of cross-ties and the "Watch-House" prevented him from seeing the engine. He did not know whether the engine was coming or not, but the fact that it was headed in the other direction when he saw it is a circumstance to be taken into consideration. He looked and listened, but this did not avail anything. He did not wholly depend on the watchwoman. She did not give him an express invitation to cross but, if what he says is true, her conduct indicated that the engine was not dangerously near, and we can not say that he might not reasonably have relied on her conduct under the circumstances, and attempted to cross. He had often crossed there while she was on duty. This is very like the case of *Wiggin* v. *Boston & Maine Ry. Co.*, 75 N. H. 600, 75 Atl. 103, where the court said: "Where a traveler at a crossing knew that a train was coming, but his view of it was obstructed, and the position of the flagman indicated that the train was not dangerously near, he might reasonably rely on the conduct of the flagman and attempt to pass over the crossing." And

this court in the recent case of *Casdorph* v. *Hines,* 89 W. Va. 448, 109 S. E. 774; held: "The omission of a flagman stationed at a crossing to give the customary stop signal is a circumstance to be considered with all other facts and circumstances in determining the degree of care exercised by an approaching traveler."

Under the circumstances shown, whether plaintiff was guilty of contributory negligence was a question for the jury, and the jury on that question found for the plaintiff. We are therefore of opinion that the court erred in setting aside the verdict. Accordingly, the judgment of the trial court will be reversed, and the court will enter judgment here for the plaintiff.

*Reversed, and judgment for plaintiff on verdict.*