T. A. MARTIN, *Admr., Etc. v.* NORFOLK & WECTERN RAILWAY COMPANY *et al.*

(No. 6991)

Submitted November 3, 1931.     Decided November 10, 1931.

*Strother, Sale, Curd & St. Clair,* for plaintiff in error.

*F. M. Rivinus, Goodykoontz & Slaven* and *Crockett & Tucker,* for defendants in error.

WOODS, JUDGE:

This is an action by an administrator to recover damages for the unlawful death of his decedent, Harry G. Hamner. Error is prosecuted from the action of the circuit court of McDowell County in sustaining a demurrer to plaintiff's evidence and dismissing the case.

The negligence alleged is that defendant, Norfolk & Western Railway Company, through its employees, on the 19th day of December, 1928, backed a certain work train, consisting of an engine, tender, derrick car, shanty cars and caboose, at a high and dangerous rate of speed, in an easterly direction upon its eastbound track over a certain alleged pass-way between the station at Kimball and a foot bridge over Elkhorn Creek, 1750 feet further east, without lights, whistle or other instrumentalities necessary to warn pedestrians crossing said pathway; and that it failed to keep a lookout.

Between the above named points the defendant maintains a westbound, a storage (center), and an eastbound track. About two hundred feet west of the bridge a sidetrack branches off the eastbound track. This, in turn, divides into two tracks about one hundred feet west of the bridge. So, at the bridge there are five parallel tracks. Immediately to the south of these tracks is Elkhorn Creek.

It appears that one hundred to one hundred fifty people, including children of high school age from the mining camp of Peerless No. 2 (south of Elkhorn Creek), use the foot bridge daily. A majority of this number have been accustomed to walk along the shoulder to the south of the tracks and pass over the tracks between the switch points on the eastbound track and a narrow place in the shoulder some two hundred and fifty feet to the west, and to use the shoulder to the north of the westbound track as a pathway in going to and from Kimball, rather than continue down Elkhorn Creek and to the south of the eastbound track to the public crossing at the railway station. A number of the school children cross over the five tracks at the end of the bridge. While it appears that the railway company, a number of years ago had threatened to cut off the end of the bridge, claiming that it was located on its property, the matter was never pressed since certain of the railway company's guy wires were anchored on the property of the coal company which had constructed the bridge.

The decedent was apparently on his way home to Peerless No. 2, when struck by defendant's train. His body was found just over the bank in the vicinity of the alleged passway. His death was pronounced as being due to internal injuries caused by a "blow in the breast." Just a few minutes prior to the accident one Obediah Witcher had met decedent along the shoulder on the north side of the westbound track at a point about two hundred and fifty feet west of the switch points. This witness stated that he talked to Hamner a few minutes about purchasing a dog; that it was about 5:20 in the evening; that it was misting rain; that after resuming his journey toward Kimball he heard a train blow; that he saw it a moment later coming from Kimball; that it passed by on

the eastbound track in the direction of the foot bridge, caboose in front; that it was running thirty-five miles per hour; that witness had gone only about two hundred feet from the point of the conversation when he heard a crash and thought the train had wrecked; that decedent was picked up by the trainmen; that witness did not go close to the train because he was afraid of decedent's police dog, which was "making a fuss." Hendricks, who saw the train come to a sudden stop from a position five hundred and fifty feet away, said it "was not dark." The only testimony as to the nature of the injury was given by the company doctor. Just how decedent was hit and by what part of the train is left to conjecture. The witness Witcher stated that there were no other noises; that he had no trouble hearing the train approaching from the direction of Kimball; that he heard it whistle some place to the west of Kimball; that he saw it pass by before the sudden stop.

Assuming Hamner to have been an invitee, as contended for by the plaintiff, and that the defendant company was clearly negligent in the operation of its train at the place of the accident, we are met with the question of whether or not the evidence adduced by plaintiff shows such negligence to be the proximate cause of the injury. The fact that no proof is offered to show that the decedent, in going up the track, stopped and looked or listened for an approaching train, does not raise the presumption that he did not stop and look or listen unless the evidence shows that he must have seen or heard the approaching train if he had looked or listened. *McVey* v. *C. & O. Ry. Co.*, 46 W. Va. 111. A person must be presumed to be without fault, unless contributory negligence is shown or may be inferred from the circumstances. *Melton* v. *Railway Co.*, 71 W. Va. 701. This presumption is overborne by the testimony of Witcher and Hendricks. There is nothing in the record to show that decedent could not see and hear as well as any mature adult of his age. We have held that it is contributory negligence such as will bar recovery for one to cross the tracks of a railroad company at a public crossing without using ordinary care and

284

caution for his safety, notwithstanding the signals required by statute are not given. *Gray* v. *N. & W. Ry. Co.,* 99 W. Va. 575. The contributory negligence in such cases will be considered the proximate cause. *Cline* v. *McAdoo,* 85 W. Va. 524.

We cannot disturb the judgment.

*Affirmed.*