CHARITY MAYNARD, ADMX. *v.* CHESAPEAKE & OHIO RAILWAY COMPANY ET AL.

(No. 6997)

Submitted November 4, 1931.    Decided December 8, 1931.

*Lilly, Lilly & Warwick,* for plaintiff in error.
*Fitzpartrick, Brown & Davis* and *C. W. Strickling,* for defendant in error.

LITZ, PRESIDENT:

Dewey Maynard was killed April 16, 1929, at a public railroad crossing in the city of Logan when a Ford motor

truck he was driving was struck by a passenger train of defendant. His widow, Charity Maynard, suing in her own right and as administratrix of the estate, prosecutes error to the ruling of the trial court sustaining a motion of defendant, after she had rested her case, to exclude the evidence and direct a verdict in its favor.

Maynard, at the time of his death, was employed as a truck driver by Malcolm Brothers Produce Company, whose place of business was located in Logan on Railroad Avenue (which runs east and west in close proximity and parallel to the railroad of defendant) 130 feet east of its intersection with Hudgins Street, extending north and south. Immediately south of the intersection of the two thoroughfares, Hudgins Street crosses the railroad, which, at that point, consists of three standard gauge tracks eight feet apart. The northern or one nearest Railroad Avenue is a spur track used for the storage of cars. The middle track carries westbound traffic while the southern track accomodates eastbound traffic. A few minutes after eight o'clock on the morning of the accident, and about the scheduled time of a westbound passenger train, Maynard, who crossed the railroad several times each day in the course of his employment, proceeded eastward on Railroad Avenue from the store of Malcolm Brothers Produce Company to the crossing, immediately east of which two box cars were standing on the storage track. On reaching Hudgins Street he turned to his right and drove the truck upon the storage track and "slowed up," or "stopped just for an instant," as three of the eye witnesses expressed it, glanced to his left, and then drove onto the westbound track where he was struck by the train. Only one witness said he came to a complete stop. Another witness testified: "Well, he slowed up on that crossing, whether he stopped or not I don't know, but if he didn't stop he come nearly to a stop, and then he just give it the gas all at once—just about all he had." No other witness testified to the rate of speed of the truck from the storage track to the point of collision. On account of the box cars, Maynard was unable to see more than seventy or eighty feet along the westbound track to the east from the place where the truck slowed up or stopped.

By driving a few feet further before stopping he could have greatly increased his vision of the westbound track. Most of the witnesses testified that they heard no crossing signals. The speed of the train, according to the estimates of various witnesses, ranged from twenty-five to forty miles an hour. Eight of the witness, though further from the crossing than Maynard (some of them being inside buildings) heard the train coming. The sound of the train's approach was necessarily amplifed by its excessive speed.

Defendant contends that Maynard could have driven beyond the spur track for observation with safety, and that his conduct, after hesitating or stopping, shows that he heard the train and attempted to clear the crossing before its arrival.

In view of the close proximity of the train to the crossing at the time Maynard started across, and the noise of its approach, there seems to be but one of two conclusions, either that he attempted to cross after hearing the train, or, if he did not hear it, that his inability to do so was due to his failure to stop the truck or reduce the sound of the motor sufficiently to render listening effectual. The court is of opinion that he did not, in either event, exercise reasonable care for his safety. Where the circumstances require a traveler to stop as well as to look and listen before entering upon a railroad crossing, the act of stopping must be of such duration and under such conditions, within his control, as will reasonably insure an effective exercise of the senses of sight and hearing. "The fact that there are freight cars standing on a sidetrack, obstructing to some extent the view and hearing of one approaching the track, requires from him greater caution and increase of diligence in the exercise of his faculties and senses to avert injury to his person." *Robinson* v. *Chesapeake & Ohio Railway Co.*, 90 W. Va. 411, 110 S. E. 870. In that case, recovery for fatal injury to a pedestrain on the same crossing was denied because of contributory negligence. "The duty to look and listen before entering upon a railroad crossing requires the traveler to exercise care to select a position from which an effective observation can be made. In 3 Elliott on Railroads (3rd Ed.), section 1661, it

is said: 'The duty to look and listen requires the traveler to exercise care to select a position from which an effective observation can be made. The mere fact of looking and listening is not always a full observance of the duty incumbent upon the traveler, for he must exercise care to make the act of looking and *listening* reasonably effective, and must usually continue to be on the lookout and exercise his faculties until he has crossed.' " *Robertson* v. *Monongahela & Ry. Co.*, 99 W. Va. 356, 128. S. E. 829.

The ruling of the circuit court is affirmed.

*Affirmed.*