GULF TRANSPORTATION COMPANY *v.* VIRGINIAN RAILWAY COMPANY

(No. 7178)

Submitted January 26, 1932.    Decided February 16, 1932.

*McGinnis & Ashworth,* and *Harry C. Ellett* and *John R. Pendleton,* for plaintiff in error.

*John Q. Hutchinson,* for defendant in error.

LITZ, JUDGE:

The Gulf Transportation Company, a corporation suing in trespass on the case, recovered judgment of $250.00 against defendant, Virginian Railway Company, for damage to a motor bus (owned and operated by plaintiff) when struck by a passenger train of defendant at a public crossing.

The accident occurred about 7:30 A. M., August 28, 1930, in Raleigh county. Russel Carter, driver of the bus, testifying for plaintiff, stated that in approaching the crossing, he stopped the bus (within ten feet therefrom) long enough to shift gears, look and listen; and that upon hearing no crossing signals or other warning of the approach of a train, proceeded over the crossing at six miles per hour. The bus, before clearing the track, was struck by a locomotive of defendant traveling west in reverse down grade, about fifteen miles per hour, attached to a baggage car and passenger coach. From the point where the bus stopped before entering upon the crossing, the driver could have seen 180 feet in the direction of the train. Three other witnesses for plaintiff testified as follows: W. T. Cook, who *was in a* store building, owned by Minter Coal Company, sixty feet from the crossing, at the time of the accident, stated that he heard the whistle of the locomotive immediately before the bus drove up to the crossing, but did not hear a bell signal. Doyle Minter, who was with Cook, testified in chief that he did not hear the whistle or the bell; but upon cross-examination, admitted that a written statement signed by him the day after the accident, in which he had stated that he heard the whistle blow for the crossing, was correct. Ethel Hebb testified that she was in her home 100 yards from the crossing rocking her baby to sleep and heard the train running, but did not hear the whistle or the bell.

J. E. Dunlap, engineer of the train, stated that a crossing signal (two long and two short blasts of the whistle) was given 1300 to 1500 feet from the crossing and followed by a station signal (one long blast); that the crossing signal was repeated two or three hundred feet from the crossing; and that the bell was rung at the time of the first crossing signal and continued ringing up to the time of the collision. He was corroborated by the fireman and brakeman. The conductor and express messenger said they heard the whistle, but did not recall hearing the bell. Four other witnesses for defendant (all of whom were apparently disinterested), testified as follows: W. S. Honaker (partially deaf) said he heard the whistle blow three or four times as he left the Minter Coal Company store, and that he had walked thirty or forty yards

from the time he heard the first blast, before the collission; but he did not hear the bell. Leonard Poe, who was probably 500 feet from the crossing, testified that he heard the whistle blow at the tipple (about 1400 feet from the crossing); but did not recall hearing the bell. This witness also testified that he heard the train running before the whistle was blown. Mrs. Earthy Brown said the train blew "several times," but she did not hear the bell. Mrs. Valley Brown asserted she "never noticed how many times" it blew, but "it seemed" like it blew "almost from the tipple to the crossing," and that she heard the bell ringing. She also testified that she heard the train running.

Plaintiff virtually concedes that warning signals were given before the train reached the crossing, but contends that they were not sufficiently continuous to comply with chapter 54, section 61, Code 1923 (31-2-8, Code 1931), requiring that "a bell or steam whistle shall be placed on each locomotive engine, which shall be rung or whistled by the engineer or fireman, at the distance of at least sixty rods from the place where the railroad crosses any public street or highway and be kept ringing or whistling for *a time sufficient to give due notice* of the approach of such train before such street or highway is reached * * *." Whether defendant fully discharged its statutory duty to sound warning signals, the undisputed evidence and circumstances tend strongly to prove that the driver of the bus did not exercise reasonable care to render listening effectual. In view of the testimony of plaintiff's witness, Ethel Hebb, and of other witnesses for defendant that they heard the train running, and its necessarily close proximity to the crossing at the time the bus stopped, it is a fair inference that the driver also could have heard the noise of the train, except for the sound of the motor of the bus. "Even the motor (of a motor vehicle approaching a railroad crossing) should be stopped, if necessary to make listening effective." 7-8 Huddy, Automobile Law, (9th Ed.), 59. In *Rayhill* v. *Southern Pacific Co.*, 35 Cal. App. 213, 169 P. 718, it was held that the failure of an automobile driver familiar with a railroad crossing (somewhat obscured from view) to stop a safe distance from the track, still the noise of

the automobile engine, and listen for an approaching train was guilty of contributory negligence as a matter of law, barring recovery for injury to the automobile. "An automobile driver, who crossed three parallel tracks and was then struck by a train which he could have seen in time had he looked, and which he would also have heard had he stopped the noise of his engine, held guilty of contributory negligence." *Louisville, etc R. Co.* v. *Cloud,* 207 Ala. 373, 92 So. 550. "Where, on account of obstructions of the view of a motorist, the use of his eyesight will not disclose the train until he is in close proximity of the track, greater vigilance is required of the driver in the use of his remaining faculties in order to act as a reasonably prudent person would, and, if there is any noise or confusion over which he has control, such as that of the noise of a vehicle, interfering with the acuteness of the sense of hearing, it is his duty to stop such noise or interfering obstruction and listen for the train before going upon the track." 1 Blashfield, Cyc. of Automobile Law, 822; *Central Coal & Coke Co.* v. *Kansas City So. Ry. Co.,* (Mo.) 215 S. W. 914; *Barnett* v. *Atchison, T. & S. F. Ry. Co.,* 99 Cal. App. 310, 278 P. 443; *Davis* v. *Chicago, R. I. & P. Ry. Co.,* 159 Fed. 10; *Bradley* v. *Missouri Pac. R. Co.,* 288 Fed. 484. "Where the circumstances require a traveler to stop as well as to look and listen before entering upon a railroad crossing, the act of stopping must be of such duration and under such conditions, within his control, as will reasonably insure an effective exercise of the senses of sight and hearing." *Maynard* v. *Chesapeake & Ohio Ry. Co.,* 111 W. Va. 372, 162 S. E. 171, decided by this court December 8, 1931.

The judgment is, therefore, reversed, verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*