RILEY J. LESTER *v.* NORFOLK & WESTERN RAILWAY CO. *et al.*

(No. 7141)

Submitted February 9, 1932.   Decided February 23, 1932.

*Crockett & Tucker,* and *F. M. Rivinus,* for plaintiffs in error.

*Strother, Sale, Curd & St. Clair,* for defendant in error.

MAXWELL, JUDGE:

As a result of a collision of plaintiff's automobile with a train of defendant company at a railroad crossing in the town

of Iaeger, causing injury to himself and damage to his car, plaintiff instituted suit in the circuit court of McDowell County against the company and some of the trainmen. He obtained a verdict of $5,000 against the company, the conductor and the engineer. The brakeman was exonerated by the jury. Writ of error has been awarded the unsuccessful defendants.

The accident occurred about 5:45 p. m. November 12, 1930,—a murky, foggy evening. Darkness had partially settled. Plaintiff, with his brother as a passenger, was proceeding westward upon the highway. The locomotive with four coaches was backing westward on a slight descent at about 12 miles per hour; from the station to the yard, the day's run having been completed. Plaintiff's automobile and the landing-step on the left side of the rear coach of the train collided, injuring him and demolishing his car.

Negligence alleged by plaintiff: no crossing signals or warnings given by defendant's employees in charge of and operating the train; lights on the end of the coach improper and inadequate; certain electrically operated wig-wag signals and bells maintained by defendant company at the crossing "failed to operate." Defendants deny negligence on their part and assert that plaintiff himself was negligent.

The evidence is irreconcilably conflicting as to whether the signals were given and the wig-wags were operating, the number of witnesses testifying each way being about equal. That the weather was inclement and foggy is not disputed. There were no obstructions to the view at or near the crossing.

Plaintiff stated that he was returning from a doctor's office in the eastern portion of the town; that he stopped at a filling station about 335 feet east of the crossing and purchased gasoline; that he then proceeded towards the crossing at a rate of speed not to exceed 15 miles per hour; that he stopped his car about 10 or 15 feet from the crossing, and looked east and west along the track and saw no train approaching; that his brother looked to the east also and said there was nothing coming; and that, observing that the wig-wag signals were not in motion and the bells attached thereto were not ringing, he drove onto the crossing in low gear. The

coach struck his car almost instantly. When asked by his counsel how far he could see along the track in either direction he stated from 200 to 400 feet. His brother said that he could see for a distance of from 30 to 40 feet eastward. Plaintiff's car was a small roadster and on his brother's side there was a curtain with isinglass in it.

Only plaintiff and his brother state that they stopped before attempting to cross the tracks. Two of defendant's witnesses testified that the car did not stop. One of plaintiff's witnesses, James Terry, standing between the tracks 75 feet east of the crossing, testified that when he saw the car it was "coming up the little bank" (at the crossing) "and the train was almost on the crossing, right on it * * * about thirty feet apart." He stated further that the last time he saw the car it was moving toward the crossing, "it was almost on the track and the passenger train had done went by me" (75 feet east of the crossing—at 12 or 15 miles per hour) "and cut the light off and I heard a crash and I ran down there." He stated also that he could see the train for a distance of about 200 feet. Another of plaintiff's witnesses testified similarly as to these salient facts, stating that he saw the train and could hear the steam from it while standing on a bridge more than 100 feet distant. Evidence of defendant's witnesses is that the train was visible at various distances from the crossing.

In the light of this evidence, particularly of plaintiff's own witness, Terry, it appears that when plaintiff approached the crossing, the train must necessarily have been less than 75 feet from the crossing and, had he stopped, and looked with ordinary care in the direction of the approaching train, he would have seen it in time to avoid the accident. In such circumstances he is not entitled to recover damages. " 'Where the circumstances require a traveler to stop as well as to look and listen before entering upon a railroad crossing, the act of stopping must be of such duration and under such conditions, within his control, as will reasonably insure an effective exercise of the senses of sight and hearing.' *Maynard* v. *Chesapeake & Ohio Ry. Co.,* 111 W. Va. 92, 162 S. E. 171." *Gulf Trans. Co.* v. *Ry. Co.,* 111 W. Va. 544, 163 S. E. 7.

The fact that it was a backing train did not lessen plaintiff's duty. *Cline* v. *McAdoo,* 85 W. Va. 524, 102 S. E. 218.

The highway over which plaintiff was driving, serving as a street in the town, parallels the railroad for about 750 feet, being approximately 25 feet away from and 6½ feet below the track. He had proceeded along the highway or street for the entire parallel distance. At the crossing the highway rises to the level of the railroad.

Did the plaintiff neglect to employ and use means that would have been employed by an ordinarily prudent person similarly situated to inform himself that there was a train so near at hand as to make his use of the crossing at that time dangerous? If so, he was guilty of negligence and even if the company was negligent, the plaintiff contributed to his own injury and cannot recover. *Cline* v. *McAdoo, supra.* Plaintiff contends that because of the gloom and the fog he was unable properly to ascertain the danger at hand. We reply that it was incumbent upon him to exercise care proportioned to the danger to be avoided, care conforming in degree to the particular circumstances under which it was to be exercised. The condition of the weather and approaching darkness were such circumstances as would increase the danger and require him to employ more vigilance. There was nothing to mislead him. True, the crossing signals may not have been working, but such fact does not constitute an invitation to a traveler on the highway to cross the tracks without ordinary precaution. *Jacobs* v. *Ry. Co.,* (Kan.) 154 Pac. 1023; *Etheridge* v. *Rd. Co.,* 143 Va. 789; *Headley* v. *Rd. Co.,* (Colo.) 154 Pac. 731.

If plaintiff did not stop, he did not exercise ordinary care under the circumstances for his own safety. But even if he stopped, he thereafter failed reasonably to employ his faculties and senses in ascertaining the impending danger. If he had looked properly he must have seen the train which had come into dangerous proximity of the crossing and which, according to the testimony of his own witnesses, was visible for a distance of more than 100 feet. Plaintiff's asserton that he did not see or hear the train which injured him, though he looked along the course over which it was then

actually moving, and listened for sounds or signals of its approach, is inconsistent with conclusions which must be drawn from the testimony of his witnesses. The mere fact that a traveler in approaching a railroad crossing stops, looks and listens is not necessarily a full performance of the duty incumbent upon him. He must exercise care to make the act of looking and listening reasonably effective. His faculties must be exercised properly and not in an inefficient and careless manner. *Gulf Trans. Co.* v. *Ry. Co., supra;* Elliott on Railroads, p. 551; *Washington etc. Ry. Co.* v. *Lacey,* 94 Va. 460, 26 S. E. 834. Where the facts make it certain that a traveler could have seen an approaching train in time to avert injury if he had looked properly, he will not be heard to say that he looked, but did not see. ''No such self stultification will be permitted in a judicial proceeding; but he will be held to have seen what was obvious * * *.'' Thompson, Com. on Negligence, Vol. II, p. 117.

A traveler approaching a railroad at a public crossing must exercise reasonable care for his own safety. Well stated, thus we find the rule: ''A railroad crossing is of itself a warning of danger, and it is the duty of a person to approach it cautiously and use reasonable care to avoid accident, that is, such care and prudence as an ordinarily prudent man would exercise under like circumstances including the use of his faculties of sight and hearing, and if he fails to do so, whereby he is injured, he is guilty of contributory negligence barring a recovery, although the railroad company itself is guilty of negligence. In proportion as the danger increases must the vigilance of the person attempting to cross increase. He is rigidly required to do all that care and prudence would suggest to avoid injury.'' 22 R. C. L., p. 1014. Illustrative of the application of this rule are the following: *Phillips* v. *Detroit R. Co.,* 111 Mich. 274; *Carlin* v. *Grand Trunk Ry. Co.,* 243 Ill. 64, 90 N. E. 201; *C. & O. Ry. Co.* v. *Farrow,* 106 Va. 137, 55 S. E. 569; *Railway Co.* v. *Howard,* 124 Ind. 280, 24 N. E. 892; *Railway Co.* v. *Leak,* 163 U. S. 280; and *McGrath* v. *Ry. Co.,* 59 N. Y. 468. ''A traveller on a public road must exercise at least ordinary care and caution. No recovery can be had by the plaintiff where his negligence in any

degree contributed to the injury received by colliding with a railroad train at a public crossing, unless the defendant, being aware of the plaintiff's danger, and having the opportunity to avert it, fails to use ordinary caution to do so." *Butcher* v. *Rd. Co.*, 37 W. Va. 180, 16 S. E. 457.

Much reliance is placed by plaintiff upon the case of *Morris* v. *B. & O. Rd. Co.*, 107 W. Va. 97, 147 S. E. 547. The evidence in that case discloses that decedent and his daughter, who was driving the car, approached a railroad crossing on a country road about ten o'clock on a "bad, foggy night" and their car was struck by the rear coach of defendants train as it was backing over the crossing, resulting in the death of the father and serious injury to the daughter. Their view in approaching the crossing, while obstructed to a certain extent at various distances, became uninterrupted at a distance of about 50 feet from the crossing. Plaintiff contended that there were no lights on the rear of the coach and that no warnings were given. The evidence was conflicting on those matters. Defendant averred that plaintiff's decedent was negligent. It appears that, while decedent and his daughter discerned certain lights in the direction from which the train was approaching, they did not interpret them to be lights of a train. This court affirmed a verdict and judgment in favor of plaintiff because we were of opinion that had decedent observed red lights on the rear of the train, he would have been warranted in believing that they were on the rear of an unreversed train, unless he could have noted the reverse movement. But the night was dark, and the movement of the train was not discernible. It was therefore a jury question whether, under the circumstances, the decedent used proper care for his own safety.

In the case at bar the train was discernible to numerous witnesses. The plaintiff, also, should have seen it. Therefore when the jury exonerated him of negligence, their finding was against the plain preponderance of the evidence.

The judgment is, therefore, reversed, the verdict set aside, and a new trial awarded.

*Reversed and remanded.*