DALE G. CASTO *v.* CHARLESTON TRANSIT COMPANY

(No. 8808)

Submitted October 19, 1938.   Decided December 6, 1938.

*J. Howard Hundley,* for plaintiff in error.

*Robert H. C. Kay, John E. Amos* and *Vincent V. Chaney,* for defendant in error.

MAXWELL, PRESIDENT:

Under review herein is a judgment of the circuit court of Kanawha County affirming a judgment, on verdict, of the court of common pleas of the same county in favor of Dale G. Casto against Charleston Transit Company for $1,000.00.

The action is for damages for personal injuries suffered by the plaintiff and for impairment of the value of his automobile, resulting from the impact of defendant's trolley car with the automobile at an intersection of the trolley tracks and a cross street in the City of Charleston.

The trolley car, interurban type, weight approximately twenty-five tons, was proceeding eastward in McCorkle Avenue on the regular east-bound track about 7:30 in the evening of June 14, 1937. There is also a west-bound track which lies between the hard-surfaced or northern portion of the avenue and the east-bound track.

Preceding the car at an indeterminate distance of several hundred feet, the plaintiff, with members of his family and a guest, in a five-passenger automobile, was traveling in the same direction as the trolley car. At Forty-Fourth Street, which intersects McCorkle Avenue at right angles, plaintiff stopped his automobile preparatory to turning to the right, crossing the tracks and traveling · south on that street en route to the residence of friends. He testified that while the automobile was stopped, he looked back down the track (westward), but could see only about 350 feet and saw no car approaching; that he then proceeded at the rate of about five miles per hour to attempt to cross the two tracks, and as the automobile was entering upon the second track, he suddenly saw the car bearing down on them. The car struck the fore part of the automobile and knocked it from the track, practically demolishing it and painfully injuring the plaintiff.

Mrs. Casto, who was seated with her husband in the front seat, testified that when the automobile was brought to a stop at the edge of the hard surface of the avenue, she also looked back but saw no street car.

In his declaration, the plaintiff charges that the accident was brought about by the unlawful rate of speed of the street car, and the failure of the motorman to maintain a proper lookout and to give proper warning of the approach of the car to the crossing.

The evidence of the plaintiff and his witnesses was sufficient to warrant the jury in believing the defendant guilty of negligence as to excessive speed of the car and failure to give timely and sufficient warning of the car's approach to the Forty-Fourth Street intersection. Consequently, there would be no doubt of the plaintiff's right to recover damages if it were not necessary that there be appraisement of his own conduct immediately before the collision. Was he guilty of contributory negligence, as insisted by the defendant?

Of the eighty feet width of McCorkle Avenue, the northern side (width not shown) is hard-surfaced. From

the southern edge of the hard surface to the west-bound track the distance is five feet, and from the same point to the east-bound track is twenty-feet. After plaintiff had stopped, preliminary to starting across the tracks, the automobile progressed from twenty to twenty-five feet before the impact.

In the direction from which the trolley car was advancing to the Forty-Fourth Street intersection, the tracks are straight for two thousand feet. At the time of the accident (in daylight) the view of the tracks westward from the intersection was wholly unobstructed, save only by a row of six inch iron trolley poles between the tracks.

It is difficult of comprehension why the approach of the trolley car did not become known to the plaintiff through his sense of sight, when he stopped and looked, or while he proceeded at an exceedingly slow rate from the edge of the hard surface to the east-bound track.

The point of this accident is in a suburban section of the municipality. The southern portion of the avenue, occupied by the trolley tracks, is unpaved, and, except at the intersections of cross-streets, is used only by the Transit Company. The community, particularly on the southern side of the avenue, is sparsely built. The physical situation is very different from that which obtains in closely built-up city sections. In the latter, because of more or less congested conditions, trolley cars *ex necessitate rei* do not move at rapid rates of speed, and, because of the general conditions which obtain, pedestrians and vehicular traffic may cross streets in front of trolley cars with much greater impunity than when the cars are moving more rapidly in rural, suburban or thinly settled communities.

Of cases arising from more congested areas *Ashley* v. *Traction Co.,* 60 W. Va. 306, 55 S. E. 1016, 9 Ann. Cas. 836, is typical. In that case the plaintiff's decedent was killed when attempting to cross a busy city street on a bicycle in front of an oncoming street car. This court set aside the verdict which had been directed for the defendant, and held that the case should have gone to the jury.

In the opinion it is stated that "it certainly cannot be said that because a person can see a car two hundred feet away, coming in the direction of the point where he expects to cross the track, he has to stand and wait until the car has passed. In a populous, active business city it would be an anomaly to hold that every traveler, in endeavoring to cross a street car track, must look and listen for a car, and if he can hear or see one distantly approaching, he must wait until the car has passed before attempting to cross the track. This is certainly not required. Ashley had the right to judge as to whether or not he had sufficient time within which to cross the track in front of the approaching car, and it was for the jury to say whether or not he exercised such judgment as a reasonably prudent person would have exercised under like circumstances. He had the right to assume that the street car company was running its car at a lawful rate of speed—that it would approach the street crossing in a lawful manner—that it would have due regard for his rights and when it saw him upon its tracks it would so operate its car as to avoid, if possible, injuring him." Syllabus point five reads: "It is not contributory negli-- gence for one to attempt to cross a street railway track in front of an approaching car, if in doing so he exercises that judgment and care which a reasonably prudent and careful person would have exercised under like circumstances."

The case of *Riedel* v. *Wheeling Traction Co.*, 69 W. Va. 18, 71 S. E. 174, is also a case that arose from a street car accident which occurred in a busy part of a city. The court held: "A traveler on the streets of a city has the right to assume that street cars will not be run at an excessive rate of speed; and if a car running at a high rate of speed collide with a traveler at a public crossing, whereby the traveler is injured, it is for the jury to say, under all the facts in the case, whether or not the street railway company is negligent." In the opinion the court stated: "The law does not apply the same rule in determining the relative rights between a street car company

and other persons in the use of a public street crossing that it applies in case of a steam railroad crossing a public highway. The rights of the former are more analogous to the rights of ordinary vehicles."

Of the kindred West Virginia cases probably the one most similar to the one at bar is *Helvey* v. *Princeton Power Co.*, 84 W. Va. 16, 99 S. E. 180. It differs in that the trolley line, though parallel with the highway and in plain view thereof, was not in the highway, as in the instant case; but in basic and controlling facts these two cases partake deeply of the same characteristics. In the *Helvey* case it appears that at a point where the highway curved toward the trolley track and intersected it at grade, the plaintiff, in an automobile, attempted to cross the track in front of a trolley car proceeding in the same direction, and was injured. The court held: "The recognized legal status and reciprocal duties, each towards the other, of an interurban railway company and a traveler on a rural highway at a public grade crossing are materially different from those prevailing in a municipality, the rights of the traveler ordinarily being subordinate to those of the company, in that to the latter is accorded priority of passage, the reciprocal rights and duties of the respective parties in such case being predicated upon that basis." In the opinion the court emphasized the differentiation between the correlative duties of a trolley car operator and a traveler in a suburban or rural community, and those arising on busy city streets. It was stated that in the former situation, the reciprocal rights and duties bear a marked resemblance to those pertaining to the operation of steam railroads.

Emphasis must be laid on the fact that legal principles applicable to a crossing accident between a railway car or train and a traveler are not determined by the railway's motive power involved, but by the physical surroundings.

Under the physical surroundings herein presented, the situation affords more reasonable basis for application of ordinary railway crossing rules than the rules respect-

ing the use of busy city streets. In a crossing case we held: "When a plaintiff is negligent and his negligence concurs and cooperates with that of the defendant, as a proximate cause of the injury complained of, he cannot recover." *Keller* v. *N. & W. Ry. Co.*, 109 W. Va. 522, 156 S. E. 50. Among similar cases, applying the same principle, are *Robertson* v. *Railway Co.*, 99 W. Va. 356, 128 S. E. 829 (an interurban trolley case) ; *Gray* v. *Railway Co.*, 99 W. Va. 575, 130 S. E. 139 ; *Robinson* v. *Railway Co.*, 90 W. Va. 411, 110 S. E. 870 ; *Lester* v. *N. & W. Railway Co.*, 111 W. Va. 605, 163 S. E. 434.

Whatever the surroundings, whether urban or rural, if the situation is such that a traveler, in the exercise of reasonable care, should look for impending danger, he must look efficiently and not carelessly or perfunctorily. *Maynard* v. *C. & O. Railway Co.*, 111 W. Va. 372, 162 S. E. 171; *Yoder* v. *Charleston Transit Co.*, 119 W. Va. 61, 192 S. E. 349. It is not sufficient for a traveler to say that he looked but failed to see that which was within view and should have been seen.

A traveler who fails to look effectively as he approaches a railway crossing, and by reason thereof does not see, within plain view, a trolley car or train drawing near, and is injured thereby, is guilty of negligence as a matter of law. In such case, the law itself speaks, and there devolves on the courts the duty to apply the law.

If the plaintiff herein had looked westward in an efficient manner, he would have observed the proximity of the trolley car and, of course, would not then have taken the risk of endeavoring to cross in front of the car. There vould have been no accident. So, to the result which unfortunately came about, it must be held as a matter of law that the plaintiff negligently contributed.

Therefore, we are of opinion that the trial court should have sustained the defendant's motion to direct a verdict in its behalf.

We reverse the judgment of the circuit court and the

judgment of court of common pleas, set aside the verdict and remand the case to the latter court.

*Reversed and remanded.*

KENNA, JUDGE, dissenting:

The accident in this case occurred within the corporate limits of the City of Charleston. I therefore think that the law of this state concerning rural highways has no application, and that the ordinances of the city should be applied. Under these ordinances, the rights of vehicles and street cars at a street intersection are reciprocal. The record contains proof that would justify the jury in finding that the street car was going at least thirty-five miles an hour as it approached the crossing of Forty-Fourth Street, which exceeded the speed limit prescribed by ordinance by ten miles an hour. The proof shows that a person standing upon the track could see an approaching street car from the west a distance of one thousand feet. This means that it would take the car approximately twenty seconds after coming to the point where it could be seen from the crossing, to reach the place where Casto's car was struck. Mrs. Casto and the plaintiff both testified that they looked for an oncoming street car. They did not see one. A person who looks can always see a visible oncoming street car, and consequently, it seems to me, that to regard his failure to see and avoid an approaching car as establishing contributory negligence as a matter of law, regardless of the extent of the defendant's lack of care, is but to warrant the wanton negligence of traction companies. The tracks were wet and there was no sand which could be applied to keep the wheels from slipping, though the street car was equipped for that purpose. Therefore, without regard to the violation of the ordinance, I think the jury's finding that the defendant had been negligent was justified. Furthermore, the jury viewed the scene of the accident, and the credibility of the witnesses was to be determined by it with the impressions arising from the view as a back-

ground. I think that the most that should be said of Casto's contributory negligence is that it was a jury question.

For the foregoing reasons I respectfully disagree with the majority of the Court.

In the brief submitted by the attorney for the plaintiff in error, there is a misquotation of the opinion of this Court handed down in the case of *Mollohan* v. *Charleston Interurban Railroad Company*, 108 W. Va. 490, 151 S. E. 698, the spurious quotation reading as follows: "It is the duty of the driver of an automobile, before entering upon the tracks of a street car, to use ordinary and reasonable care in ascertaining whether or not a street car was appoaching, and to allow it to pass first, if the respective speed of the street car and the automobile are such that the automobile could not clear the tracks before the street car would arrive." That part of the opinion, reference to which is obviously intended, reads as follows: "In other words, it was the duty of the driver of the automobile, before entering upon the tracks of the street car, to use ordinary and reasonable care in ascertaining whether or not a street car was approaching, and to allow it to pass first, if the respective speed of the street car and the automobile were such that the automobile could not clear the tracks before the street car would arrive."

It is plain that what the court had to say in the *Mollohan* case was based upon the evidence in that specific case and was not intended as the statement of a general rule. The language was used in discussing the effect of a specific ordinance, and is not applicable here.