DOVIE ARROWOOD, *Admrx., etc. v.* NORFOLK & WESTERN RAILWAY COMPANY

(No. 9608)

Submitted October 3, 1944. Decided December 12, 1944.

*Randolph Bias* and *J. Walter Copley,* for plaintiff in error.

*Lant R. Slaven,* for defendant in error.

Lovins, Judge:

This action was instituted in the Circuit Court of Mingo County by Dovie Arrowood, administratrix of her deceased husband, against the Norfolk & Western Railway Company to recover damages for his death. At the conclusion of plaintiff's testimony the trial court, over plaintiff's objection, sustained defendant's motion to strike all plaintiff's evidence, directed the jury to return a verdict for defendant, overruled a motion to set aside the verdict, and entered judgment that plaintiff take nothing by her action. Plaintiff prosecutes this writ of error.

Plaintiff's decedent, Frank Arrowood, was instantly killed by the first section of defendant's westbound passenger train No. 3, while driving an automobile over a public crossing at the Village of Borderland. Although generally known as a westbound train, it actually approached the crossing from a westerly direction due to curvature and location of the railway line. Borderland lies between Tug River on the north and defendant's railway tracks on the south. U. S. Route 52 at the point the accident occurred is south of and generally parallel with defendant's tracks, so that to enter and depart from the village it is necessary to use the crossing on which plaintiff's decedent was fatally injured. The crossing approached from the north, as Arrowood did, consists of three tracks: the eastbound main track, the westbound main track, on which deceased was struck, and a siding for the storage of railway cars. It was marked by a sign reading "Railroad Crossing. Look out for the locomotive", there being no crossing lights or other safety devices. The general level of the Village of Borderland is approximately seven and a half feet lower than the level of the crossing, and the road leading up to the crossing is located on a rather steep ascending grade. At the time of the accident two concrete piers three and a half to four feet high, each with a base five by nine feet, were located on the northwesterly side of the crossing. Near the piers and immediately west of the road is an accumulation of gravel forty-two inches high, which marks the end of a spur track. The piers and

gravel were to the right of decedent as he approached the crossing from the north. The track in the direction from which the train approached the crossing is almost straight for a distance of approximately twelve hundred feet. The view from the road over which deceased was travelling just prior to the accident is obstructed in part by three houses and at certain points by the concrete piers above mentioned, and in some slight degree by the gravel. At a point approximately twenty-six feet from the center of the westbound main line there is a clear view of the track for a distance of twelve hundred feet.

Plaintiff's decedent was a taxi-cab driver, with a station at or near defendant's passenger depot in Williamson, West Virginia, at which he received calls for his services. Shortly after two o'clock A. M. on the day of the accident, he was engaged to transport three persons from Williamson to the Village of Borderland. The three passengers were carried safely into Borderland, the vehicle having been operated in a careful manner. Decedent turned the vehicle and started on his return to Williamson. On arriving at the north-end of the crossing with his front wheels on the ascending grade, he stopped momentarily, immediately resumed motion, and while passing over the crossing was struck by defendant's train on the westbound main track.

It is established by six witnesses, who were at or near the scene of the accident and who testified with varying degrees of certainty, that the whistle and bell of the locomotive which struck deceased were not sounded or rung before the accident. Two of these witnesses were passengers of the taxi-cab who had just alighted from decedent's automobile, two others were travelling in a motor vehicle on U..S. Route 52 about three hundred feet from the crossing, another was standing at or near the crossing on Route 52, with the intention of hailing decedent and riding with him to Williamson, and another was in an automobile parked near the crossing.

No evidence was introduced by defendant, and the only error assigned is the action of the trial court in di-

recting a verdict for defendant, overruling plaintiff's motion to set aside the verdict, and in entering judgment thereon.

It is alleged in the declaration and the undisputed evidence of plaintiff tends to show that defendant was guilty of primary negligence in failing to give the warning signal by bell or whistle as required by statute. Code, 31-2-8. Although the record does not so show, it is evident that the trial court was of the opinion that plaintiff's evidence established that her decedent was guilty of contributory negligence as a matter of law, and defendant in brief and oral argument so contends in this Court. Plaintiff contends with equal vigor that her decedent exercised the necessary care and prudence in using the crossing, and that his death resulted solely from the negligence of defendant. It is therefore obvious that the only question to be resolved is whether the evidence establishes as a matter of law that deceased's conduct proximately contributed to the accident which caused his death. The controlling rule of law in determining the question of contributory negligence in cases of this kind is aptly stated thus: "Whether a traveler upon a highway is guilty of contributory negligence in entering upon a crossing is a question for the jury, where the facts are in dispute, or where from the conceded facts two conclusions may be drawn with equal plausibility, one of which would make such injured party guilty of contributory negligence, and the other indicate that he was in the exercise of due care." *Canterbury* v. *Director General*, 87 W. Va. 233, 104 S. E. 597. As indicated above, the facts are not in dispute, and, therefore, we must determine whether the evidence before us so clearly established deceased's negligence that no other plausible conclusion may be reached save that his own negligent conduct proximately caused or contributed to the fatal accident.

Code, 31-2-8, requires that a bell or steam whistle be rung or sounded at least sixty rods from the public crossing. The only evidence before us is that the warning signals required by the statute aforesaid were not given, and the failure to do so constitutes negligence on the part

of the defendant. *Canterbury* v. *Director General, supra.*

Notwithstanding defendant's negligence, if deceased's contributory negligence is established as a matter of law, plaintiff can have no recovery. *Robertson* v. *Railway Co.,* 99 W. Va. 356, 128 S. E. 829; *Cline* v. *McAdoo,* 85 W. Va. 524, 102 S. E. 218. The duties incumbent upon travellers using a public railroad crossing have been variantly defined in this jurisdiction. It has been held that failure of a person to stop and also look and listen before crossing a railway track constituted contributory negligence *per se. Cline* v. *McAdoo, supra.* It is not negligence *per se* in all cases where a traveller does not stop before passing over a railway track at a public crossing. *Bonar* v. *Railway Co.,* 91 W. Va. 462, 113 S. E. 766; *City of Elkins* v. *Railway Co.,* 76 W. Va. 733, 86 S. E. 762. It has also been held that failure on the part of a traveller to look and listen before passing over a railway track at a public grade crossing amounted to such contributory negligence as to bar recovery. *Gray* v. *Railway Co.,* 99 W. Va. 575, 130 S. E. 139. See *Robertson* v. *Railway Co., supra; Krodel* v. *Railroad Co.,* 99 W. Va. 374, 128 S. E. 824. In some instances the rule has been approved and applied that where required by circumstances, it was the duty of the traveller to stop, as well as look and listen before crossing the railroad track. *Maynard* v. *C. & O. R. R. Co.,* 111 W. Va. 372, 374, 162 S. E. 171; *Gulf Transportation* v. *Virginian Ry.,* 111 W. Va. 544, 163 S. E. 7; *Lester* v. *N. & W. Ry.,* 111 W. Va. 605, 163 S. E. 434. But failure on the part of a traveller to look and listen before passing over a railway track does not in every instance show lack of ordinary care as a matter of law. *Morris* v. *Railroad Co.,* 107 W. Va. 97, 147 S. E. 547. "The duty of the decedent to 'look and listen depended on whether 'it would have availed him had he looked and listened.' Whether decedent would have comprehended the danger of the situation had he looked and listened was a jury question." *Morris* v. *Railroad Co., supra.*

It is without dispute that decedent stopped his vehicle before he attempted to pass over the railway tracks. It is presumed, there being no evidence to the contrary, that

decedent looked and listened, and we cannot say that he did not do all that the law required him to do to avoid the fatal accident. *Carnefix* v. *Railroad Co.*, 73 W. Va. 534, 538, 82 S. E. 219. The deceased had the right to assume that the statutory warning signals would be given, but such failure did not excuse him from exercising ordinary care, and taking the necessary precautions for his safety. *Canterbury* v. *Director General, supra; Gray* v. *Railway Co., supra.*

The undisputed fact that plaintiff's decedent stopped the automobile just before attempting to cross the railway track, together with the presumption that plaintiff's decedent looked and listened, establishes a sufficient compliance with the requirements of law on the part of plaintiff's decedent so as to absolve him from the charge of contributory negligence.

Is the presumption above mentioned rebutted by the fact that the track was almost straight for a distance of twelve hundred feet in the direction from which the train approached the crossing? The approximate speed of the train is not shown, except that one witness said it was going "pretty fast". We cannot say how much time elapsed between the time it came in view and the time of the collision at the crossing.

It is pertinent to note that the view of plaintiff's decedent was obstructed at certain points by three houses, the two concrete structures and, in a measure, by the pile of sand and gravel. It is also an important and material fact that the road on which he travelled just before reaching the crossing was seven and a half feet lower than the railroad tracks.

Plaintiff's decedent is shown to have been familiar with the road from Borderland to Williamson and that portion of the road passing over the railway tracks at Borderland, where he lost his life, but there is no showing that he knew the location of the houses and the structures above mentioned which obstructed his view at some points along the road he travelled just before he was struck. Moreover, it is well to observe that the accident occurred at night.

In view of the foregoing can we say that any other conclusion can be reached except that deceased failed to efficiently look and listen for the approach of the defendant's train? We think not. It is plausible to conclude that plaintiff's decedent, when he stopped was unaware of the obstructions to his view, and being located seven and a half feet below the level of the railway tracks his senses of sight and hearing may not have apprised him of his danger. The fact that plaintiff's decedent was struck on the crossing alone is not sufficient to establish his contributory negligence, and on motion to direct a verdict in defendant's favor "* * * every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true which the jury may properly find under the evidence." *Fielder* v. *Cab Company*, 122 W. Va. 522, 11 S. E. 2d 115; *Boyce* v. *Black*, 123 W. Va. 234, 15 S. E. 2d 588.

We think that this record presents a case in which it was error on the part of the trial court to direct a verdict for the defendant.

Accordingly, the judgment of the trial court is reversed, the verdict set aside, and a new trial awarded.

> *Judgment reversed; verdict set aside;*
> *new trial awarded.*

ROSE, PRESIDENT, dissenting:

I am unable to concur in a reversal of this case. The decedent would seem clearly to have been guilty of contributory or concurring negligence, as a matter of law, by which any right of recovery by reason of his death is legally barred. The principles of law upon which this conclusion rests are perfectly familiar and thoroughly established by previous decisions of this Court.

It is conceded that the plaintiff, by the testimony of witnesses to the effect that no whistle was blown or bell rung as the train approached the crossing where the acci-

dent occurred, made out a *prima facie* showing of primary negligence against the defendant.

It is also true, of course, that the question of contributory negligence, in railroad crossing accidents, as in all others where there is conflict of evidence, or where the evidence presents facts from which different conclusions might be legally drawn, must be submitted to a jury. But it has also been held by this Court in a multitude of cases, involving accidents at railroad crossings, that the evidence may be such as to establish contributory or concurrent negligence as a matter of law against the party injured, and thus to require from the court a directed verdict in favor of the defendant. *Casto* v. *Charleston Transit Company*, 120 W. Va. 676, 200 S. E. 841; *Lester* v. *Norfolk & Western Railway Co.*, 111 W. Va. 605, 163 S. E. 434; *Gulf Transportation Company* v. *Virginian Railway Company*, 111 W. Va. 544, 163 S. E. 7; *Maynard* v. *Chesapeake & Ohio Railway Company*, 111 W. Va. 372, 162 S. E. 171; *Martin* v. *Norfolk & Western Railway Company*, 111 W. Va. 281, 161 S. E. 446; *Jackson* v. *The Chesapeake & Ohio Railway Company*, 110 W. Va. 568, 159 S. E. 517; *McKinney* v. *The Virginian Railway Company*, 105 W. Va. 319, 142 S. E. 442; *Gray* v. *N. & W. Railway Company*, 99 W. Va. 575, 130 S. E. 139; *Krodel* v. *Baltimore & Ohio Railroad Company*, 99 W. Va. 374, 128 S. E. 824; *Cavendish* v. *Chesapeake & Ohio Railway Company*, 95 W. Va. 490, 121 S. E. 498; *Cline* v. *Mc-Adoo*, 85 W. Va. 524, 102 S. E. 218; *Bassford* v. *Pittsburgh, C., C. & St. L. Ry. Co.*, 70 W. Va. 280, 73 S. E. 926; *Butcher* v. *West Virginia & P. R. Co.*, 37 W. Va. 180, 16 S. E. 457. And contributory negligence may be shown sufficiently by the plaintiff's evidence to defeat recovery. *Browning* v. *Tolley*, 111 W. Va. 548, 163 S. E. 10.

It is the duty of a motorist or other person making use of a railroad crossing to exercise reasonable care for his own safety by making proper observation to discover approaching trains. *Casto* v. *Charleston Transit Company, supra; Lester* v. *Norfolk & Western Railway Company, supra; Robertson* v. *Monongahela Power & Railway Company*, 99 W. Va. 356, 128 S. E. 829; *Jameson* v. *Norfolk & Western*

*Railway Company,* 97 W. Va. 119, 124 S. E. 491; *Buchanan v. Norfolk & Western Ry. Co.,* 99 W. Va. 326, 128 S. E. 652; *Cavendish* v. *Chesapeake & Ohio Railway Company, supra; Bonar* v. *Baltimore & Ohio Railroad Company,* 91 W. Va. 462, 113 S. E. 766; *Robinson* v. *Chesapeake & Ohio Railway Company,* 90 W. Va. 411, 110 S. E. 870; *Cline* v. *McAdoo, supra;* and *Bassford* v. *Pittsburgh, C., C. & St. L. Ry. Co., supra.*

The precautions to be taken by one using a railroad crossing must not be merely perfunctory or simply gestures. In pretending to look out for approaching trains, the looking and listening must be actual and effective and from a position where they can be effective. *Casto* v. *Charleston Transit Company, supra; Yoder* v. *Charleston Transit Company,* 119 W. Va. 61, 192 S. E. 349; *Gulf Transportation Company* v. *Virginian Railway Company, supra; Maynard* v. *Chesapeake & Ohio Railway Company, supra; Jackson* v. *The Chesapeake & Ohio Railway Company, supra; Krodel* v. *Baltimore & Ohio Railroad Company, supra; Robertson* v. *Monongahela Power & Railway Company, supra; Gray* v. *N. & W. Railway Company, supra; Robinson* v. *Chesapeake & Ohio Railway Company, supra; Riedel* v. *Wheeling Traction Company,* 63 W. Va. 522, 61 S. E. 821.

The duty to exercise care at a railroad crossing cannot be cast wholly upon the railroad company, but is one devolving equally upon the motorist or other person making use of the crossing. *Carnefix* v. *Kanawha & Michigan Railroad Co.,* 73 W. Va. 534, 82 S. E. 219; *Berkeley* v. *Chesapeake & Ohio Railway Company,* 43 W. Va. 11, 26 S. E. 349; *Beyel* v. *Newport News & M. V. Railroad Company,* 34 W. Va. 538, 12 S. E. 532.

Nor is one making use of a railroad crossing excused from exercising care for his own safety by the fact that certain obstructions, total or partial, interfere with his view or hearing. On the contrary, the presence of such an obstruction requires greater effort and vigilance on his part. *Gulf Transportation Company* v. *Virginian Railway Company, supra; Gray* v. *N. & W. Railway Company,*

*supra; Robertson* v. *Monongahela Power & Railway Company, supra; Cavendish* v. *Chesapeake & Ohio Railway Company, supra; Robinson* v. *Chesapeake & Ohio Railway Company, supra; Berkeley* v. *Chesapeake & Ohio Railway Company, supra.*

These principles, long established and not questioned, and directly applicable to the undisputed facts in evidence, would seem to decide this case. The railroad track was practically straight for a distance of more than twelve hundred feet, or almost a quarter of a mile, from the crossing in the direction from which the train approached. The view, by the decedent, as he drove toward the railroad track, was clear for about ninety-eight feet, except that at a point thirty-eight feet from the center of the first track there intervened between him and the approaching train two concrete pillars, in height only three and one-half to four feet above the level of the tracks and which are said to have interfered with his vision for a distance of eighteen feet. How these pillars could wholly cut off his view of the train does not appear, but, for the purpose of the questions here involved, it may be assumed, though not proved, that the obstruction of decedent's view was total. The decedent then had, without question, a full and complete view of the train from the time he passed these pillars until he was struck. The pile of ballast forty-two inches high is not claimed to have been an additional obstruction. It could not have been. After emerging from the pillars he had a full thirty feet before being in danger; or, stated in the aggregate, the decedent had a clear and unobstructed view of the approaching train while he traveled a distance of at least ninety-eight feet, less the eighteen feet where the pillars are assumed to have intervened. He should have seen the train before reaching the pillars. What he could have seen he is charged in law with having seen. He was perfectly familiar with the crossing. He clearly realized his duty to look and listen, else why would he stop before crossing? He could have seen the train from the point where he stopped. From a legal standpoint, he did see what he could have seen. Nevertheless,

he drove on. What matters it that the pillars obstructed wholly or partially his view for eighteen feet as he approached the crossing? He is legally charged with the knowledge that the train was approaching. Or even if he did not see or could not have seen the train until he cleared the pillars, the case is no better. Obstructions do not excuse care on the part of the traveler; on the contrary, they exact greater precautions. One darting from the concealment of a standing automobile into the proper way of another moving car is always held contributorily negligent. How is a motorist emerging from behind an obstruction, complete or partial, onto a track upon which a train is approaching, less chargeable with lack of care? The decedent had thirty feet of perfectly clear view after passing the pillars. In that space he could not have avoided seeing the train, or, at least, its flood light falling on the ground before him. He could have stopped his car. If his speed was too great to permit of stopping, that alone would have been negligence on his part. He could not ignore nor neglect this last perfect and completely adequate opportunity to observe his danger and then be held to have exercised due care.

It is true, of course, that the decedent had the right to assume the trainmen would not approach the railroad crossing without giving the statutory warning signals, but this does not mean that he could cast all care on the trainmen. They also had the right to assume that he would not drive onto the track in plain view of the rapidly approaching train. The duty of the trainmen and of the decedent using the crossing was mutual and reciprocal, but the train had the right-of-way. It could not stop for him; he could, and was legally required to, yield the way to the train. Each failed in the duty required. The negligence of the decedent clearly contributed and concurred to produce the fatal result. Hence no cause of action arose.

Judge Fox joins in this opinion.