# CHARLESTON.

JOHN D. CANTERBURY *v.* THE DIRECTOR GENERAL OF RAILROADS AND ALEXANDER H. WILSON.

Submitted October 12, 1920.   Decided October 19, 1920.

1.  RAILROADS—*Omission of Signals Actionable Unless Traveler is Guilty of Contributory Negligence.*

    It is the duty of those in charge of a train being operated over a railroad in this state, upon approaching a highway crossing, to give the signals required by law, and if a traveler crossing such railway at such crossing is injured by be-

ing struck by a moving train which has not given such crossing signals, the operator of such railway will be liable for the resulting injury, unless it appears that the injured party was guilty of contributory negligence in entering upon the crossing under the circumstances of the particular case. (p. 237).

2.   SAME—*Contributory Negligence Question of Fact.*

Whether a traveler upon a highway is guilty of contributory negligence in entering upon a crossing is a question for the jury, where the facts are in dispute, or where from the conceded facts two conclusions may be drawn with equal plausibility, one of which would make such injured party guilty of contributory negligence, and the other indicate that he was in the exercise of due care.   (p. 241).

3.   SAME—*Contributory Negligence Defined.*

In determining whether or not a traveler crossing a railroad at a highway crossing is guilty of contributory negligence, so as to bar a recovery by him for an injury received by being struck by a train at such crossing, the jury must consider all of the facts and circumstances shown in the case, including the speed of the train, the fact that such train did or did not give the usual crossing signal, the distance at which an approaching train could be observed by one going upon the crossing, the care exercised by such injured party before entering thereon, and if from all of these facts it appears that the injured party has taken such precautions as would have been taken by one of ordinary prudence under the circumstances, he will not be held guilty of contributory negligence. (p. 241).

(WILLIAMS, PRESIDENT, absent.)

Error to Circuit Court, Mason County.

Action by John D. Canterbury against the Director General of Railroads and others.   Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Rankin Wiley,* for plaintiffs in error.

*Somerville & Somerville* and *Chas. E. Hogg,* for defendant in error.

RITZ, JUDGE:

The plaintiff, while driving two horses belonging to him attached to a buggy, was struck by a train operated by the

Director General of Railroads at a highway crossing, as a result of which both of his horses were killed, his buggy destroyed, and he sustained very severe and permanent personal injuries. He brought this suit to recover damages for the injury thus sustained, and from a judgment of the circuit court awarding him compensation therefor this writ of error is prosecuted.

The plaintiff was a rural mail carrier at the time of the accident. His trip began in the morning at Gallipolis Ferry, and extended to some point out in the county of Mason, which is not named in the record, and in the afternoon he returned to Gallipolis Ferry, but by a different road from that used by him on his outward bound trip. On this return trip the road led him across the track of the Baltimore & Ohio Railroad Company which was then being operated by the defendant Director General of Railroads. Before reaching the particular crossing at which this accident occurred the public highway for several hundred yards ran along parallel with the railroad track. The highway, however, was located down in a low bottom, while the railroad track was elevated some fifteen or twenty feet above. Just before reaching the crossing the highway turns toward the railroad track and ascends an embankment to a level with the railroad, and crosses the track at an angle of about forty-five degrees. Just a few feet north of the crossing the railroad track curves slightly, but not sufficiently to obstruct the view thereof by one approaching the crossing from the direction in which the plaintiff was approaching it. About six hundred feet from the crossing, however, there is a considerable curve in the railroad track; and because of this curve, as well as because of the fact that there is a deep cut through which the railroad runs, a view of the track, or of a locomotive approaching thereon, cannot be had from the crossing for a distance of more than about six hundred feet. The accident occurred on the 12th day of February which was, according to the testimony, a rather cold, cloudy day, there having been frequent showers of rain and sleet during the day, and the plaintiff says that just before he reached the crossing, and while he was starting up the incline in the high-

way to enter upon the crossing, a heavy shower of rain and
sleet began, to protect himself from which he raised the top
of his buggy, without stopping the team, however. The train
which struck the plaintiff at the crossing was a passenger train,
and was, according to the testimony of the engineman in
charge, running at a speed of forty-five miles an hour.

The sole negligence charged in the declaration, and relied
upon for a recovery, is that those in charge of the train did not
sound any alarm upon approaching this crossing, as required
by law, by reason of which failure the plaintiff sustained his
injuries. Under the instructions of the court, in order to find
for the plaintiff at all, the jury were required to find that
the crossing alarm was not given, so that the jury's verdict
necessarily found that the engineman did not blow the whistle,
nor ring the bell when approaching this crossing. This find-
ing is supported by the evidence which is conflicting upon this
point. The plaintiff introduced a great number of passengers
who were on the train, all of whom swear that they heard no
crossing signal given. Little weight, however, could be given
to their testimony, as it was of a purely negative character, and
not only that, but their situation upon the fast-moving train
was such that there was very little probability, indeed, that
they would have heard the signal had it been given, unless their
attention had been particularly directed to it, which is not
shown to be the case. But there are some other witnesses
whose testimony is of a more convincing character. One wit-
ness testifies that just before this accident, Canterbury stopped
at his boat, which was anchored near the crossing, and talked
to him; that at the time the train passed he, together with
a companion, was standing very near the whistle board; that
their attention was attracted to the passing train, and both of
them swear that it did not give the crossing alarm. There
were also introduced two female witnesses, one of whom lived
near the point of the accident, who stated that they had just
crossed the railroad going up a hollow to the residence of one
of them, at the time the train passed, and that this point at
which they crossed was right at the whistle board, and that
the train did not whistle, and one of them testifies that they

commented upon this fact at the time, and before they ever heard of Canterbury's injury. On the other hand, the engineman in charge testifies that he blew the regular crossing signal, and set his bell ringing at the proper distance from the crossing. The flagman on the train, who was riding in the rear car, states that it was part of his duty to listen for the whistle signal, and that he heard the crossing signal blown. On this showing the jury found that the crossing signal had not been given, and we cannot say that the testimony did not justify the verdict.

The defense most insisted upon is that, assuming that the crossing signal was not given, still, under the evidence, the plaintiff was guilty of contributory negligence such as bars a recovery upon his part. In fact it may be said that this is the only question of substance involved in the case. There is no room for the application of the doctrine of last clear chance, as it clearly appears that it would have been impossible to stop the rapidly-moving train in time to prevent the accident had the engineer seen the plaintiff upon the crossing at the very earliest moment that he could have been seen from the locomotive. The defendants insist that the plaintiff was guilty of contributory negligence in driving upon the track under the circumstances shown. It appears that while the plaintiff was driving along the highway parallel with the railroad track, a view could not be had of the railroad in the direction from which the train came further than the deep cut above referred to, which was about six hundred feet from the crossing, and through which the railroad track was laid upon a considerable curve, nor could a clear view be had even of the track between this point and the crossing until a traveler reached the top of the incline just before going upon the crossing. At a point about forty-five feet from the center of the track measured along the center of the highway, a locomotive would be visible for a distance of six hundred feet in the direction from which the train came that struck the plaintiff. This point of observation is only about twenty-six feet from the center of the railroad track measured at right angles thereto, but because of the fact that the highway intersects the railroad at

an angle of forty-five degrees the distance is longer measuring it on the center line of the highway. Because of the fact that the track slightly curves just a few feet from the crossing, the view is somewhat obstructed as the crossing is approached, and one standing on the crossing does not have a view for as long a distance as one standing at the point above indicated, forty-five feet from the center of the track. It appears further that because of this curve in the track one in charge of an engine would not be able to see the crossing until within about three hundred and fifty feet of it. It appears that on the afternoon in question the train which struck the plaintiff was behind its regular schedule. It was a passenger train and, as before stated, was running at a speed of forty-five miles an hour. The plaintiff knew the schedule of this train, but he did not know at the time he entered upon the crossing whether the train had passed or not. He says that when he got to the top of the embankment, and just before entering upon the crossing, he extended his head out to the front of his buggy beyond the side curtain which protected him from the rain on that side, and looked up the track, and also listened for a train approaching from that direction; that he had a view of the track up to the point where it began to curve sharply and entered the deep cut above referred to; that there was no train in sight, nor did he hear any approaching from that direction. He did not stop his team, but while the team was still proceeding he turned and looked in the opposite direction. His horses just about that time were entering upon the track, and he says as he turned his head, after making the last observation above referred to, one of his horses showed some appearance of fright. He immediately turned his head in the direction in which he had first looked, and saw the approaching train within a very short distance from him. It was so close upon him, in fact, that before he could do anything to save himself or his team, the oncoming locomotive struck them, killed both of the horses, destroyed the buggy, and threw the plaintiff a considerable distance into a field. Both of the bones of one of his legs, between the knee and the ankle, were crushed and splintered, and for many months

he was engaged practically all of the time in having surgical attention rendered to this leg. At the time of the trial he had recovered from the injury, but the injured member was something like an inch shorter than his other leg, and where the bones had knit was very much weaker. The defendant Wilson, who was the engineman in charge of the locomotive which struck the plaintiff, says that he did not see the plaintiff or his horses or buggy until after the injury. He says that he did not know that he had ever run over them until his fireman called his attention to it just after he passed the crossing, when he stopped the train and found the plaintiff's buggy upon the pilot of his engine, and upon going back to the crossing found the two horses already dead, and the plaintiff suffering from the injury above described.

Under this state of facts, was the plaintiff guilty of contributory negligence as matter of law? It must be borne in mind that the fact that one is injured at a railroad crossing does not of itself prove that he is guilty of contributory negligence. It may be true, and no doubt is that in very many of the cases recovery has been denied upon this ground, but there are quite a few in which recovery has been allowed upon the theory that under the peculiar facts shown it was for the jury to say whether or not the plaintiff had exercised reasonable care and prudence for his safety. It is suggested that the plaintiff's statement that he looked in the direction in which this train came, and saw the track clear for the distance of six hundred feet just before entering upon the track cannot be true, for the reason that if such had been the case he would have gotten clear of the crossing before the train could have reached him, and our first impression inclined us to give consideration to that contention, but when the speed of the oncoming train is considered, we find that it would only take this train nine seconds to travel a distance of six hundred feet, while the plaintiff was some forty-odd feet away from the center of the crossing at the time he made the view, his horses walking at an ordinary gait. The plaintiff's statement, therefore, does not appear at all unreasonable. These nine seconds easily may have elapsed between the time he turned his head to look in

the opposite direction for a train and the time he was actually hit on the crossing.

It is also argued that this is a dangerous crossing, and was known to be so by the plaintiff. That is quite true, and the court instructed the jury that because of this fact the plaintiff was required to exercise more care than he would be called upon to exercise had there been a clear and less unobstructed view of the railroad track. The plaintiff did not stop his team before entering upon the crossing, nor can we say that he would have accomplished anything by doing so. He could see just as far while the team was moving as he could had it been standing still, and it does not appear that he could have heard a train approaching for any greater distance had his buggy been standing than he could under the existing circumstances.

In answer to special interrogatories submitted to them, the jury found that the plaintiff did look and listen before going upon the track, and that he did take reasonable precaution for his safety. The law does not require that a traveler over a railroad crossing at a public highway shall be ubiquitous, but he is required to use for his own saftey the faculties with which nature has endowed him. He may not enter upon a crossing blindly, nor without making any observations to determine whether or not trains are approaching the same. The fact that the law imposes upon railroad companies the duty of sounding a crossing alarm before passing over a public crossing indicates that something more than care upon the part of the traveler using the crossing is considered necessary to prevent accidents thereat. The law considers that such crossing accidents can only be prevented by the exercise of due care, both upon the part of the traveler, and upon the part of the railroad company. In this case the jury has found that the railroad company did not perform the duty imposed upon it, and it has also found that the plaintiff did take proper precaution for his safety before entering upon the crossing. The plaintiff had a right to believe that the defendants would exercise due care before running this train over this crossing, and they cannot be excused from paying damages for the injury inflicted as a result of the negligence of which the jury has found they

were guilty, unless it appears that the plaintiff himself did not take such precaution for his safety as would have been taken by an ordinarily prudent man under like circumstances. The fact that the plaintiff did not stop before entering upon the crossing does not necessarily charge him with negligence. The duty to stop might be proper; indeed, it may be necessary, where a view of the track could not be had while the traveler was moving, but where the traveler's view is unobstructed and his observation would be no better had he stopped, there is no obligation upon him to do so. Each case of this character must turn upon its own peculiar state of facts. Ordinarily, where the facts are not in dispute, and it may be said in this case that so far as they bear upon this question of contributory negligence there is no dispute, the question of contributory negligence is for the court; but where the facts are disputed, or where they are not disputed, and two reasonable inferences may be drawn therefrom, or two reasonable conclusions as to the conduct of the plaintiff may be reached therefrom, one of which would make the plaintiff guilty of contributory negligence, and the other of which would relieve him thereof, it is for the jury to say, upon a consideration of all of the circumstances, whether or not he was at the time of the injury in the exercise of due care. The doctrine that the jury must judge as to whether or not a traveler has exercised due diligence in entering upon a railroad crossing, where the circumstances are such that there may be a reasonable difference of opinion upon the question is somewhat elaborately discussed in our cases of *Carnefix* v. *R. R. Co.,* 73 W. Va. 534; and *City of Elkins* v. *Railway Co.,* 76 W. Va. 733, and has been dealt with by courts in other jurisdictions in the following illustrative cases: *Hicks* v. *R. Co.,* 164 Mass. 424, 49 Am. St. Rep. 471; *Atchinson, etc. R. Co.* v. *Hague,* 54 Kan. 284, 45 Am. St. Rep. 278; *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408; *Ladouceur* v. *Northern Pacific R. Co.,* 4 Wash. 38, 29 Pac. 942; *Nichols* v. *C. B. & Q. R. Co.,* 44 Colo. 501, 98 Pac. 808; *Wallenburg* v. *Railway Co.,* 86 Nebr. 642, 126 N. W. 289, 37 L. R. A. (N. S.) 135; *Dickinson* v. *Erie R. Co.,* 81 N. J. L. 464, 81 Atl. 104, 37 L. R. A. (N. S.) 150; *Wichita etc. R. Co.* v.

*Davis,* 37 Kansas, 275, 1 Am. St. Rep. 275; *Continental Imp. Co.* v. *Stead,* 95 U. S. 161; *Sealey* v. *Southern Ry. Co.,* 151 Fed. 736; *Calhoun* v. *Pennsylvania R. Co.,* 223 Pa. St. 298; *Henry* v. *C. C. C. & St. L. Ry. Co.,* 236 Ill. 219; 86 N. E. 231; *Dougherty* v. *C. M. & St P. Ry. Co.,* 20 S. D. 46, 104 N. W. 672; *New York etc. R. Co.* v. *Moore,* 105 Fed. 725; *St. L. & S. F. Ry. Co.* v. *Barker,* 77 Fed. 810.

Complaint is made of the instructions given to the jury on behalf of the plaintiff. A number of these instructions tell the jury that if they believe from the evidence that the train which collided with the plaintiff did not sound the alarm signal when approaching the crossing, as required by law, and that this failure was the proximate cause of the injury to the plaintiff, and that the plaintiff was in the exercise of due care at the time he entered upon the crossing, the defendants are liable for the resulting injury. These instructions propound the law governing cases like this as it frequently has been announced by this court. The converse of the proposition was repeatedly given by the court upon motion of the defendant, that is, that if they believed from the evidence that the plaintiff entered upon the crossing without exercising ordinary care for his safety, he could not recover, even though they believed that no crossing alarm was sounded; and they were further instructed that if they believed this crossing was more dangerous than the ordinary crossing, then a higher degree of care was required of the plaintiff before entering upon it than would ordinarily be required. It may be said in passing that the theories of the parties as above indicated were unnecessarily repeated to the jury in the instructions, but it appears that neither side is in a position to take advantage of this repetition.

Particular objection is made to plaintiff's instruction No. 9 which told the jury that a traveler on a highway has a right to assume that those in charge of a moving train will give the statutory signals, and thus warn him of impending danger and to act on this assumption, unless the traveler actually sees the train, or knows of its approach. This instruction, standing alone, is incomplete. It is not binding, and in order to make

it applicable to the case at bar it must be read in connection with the other instructions given. It is true that a traveler upon a highway may assume that those in charge of a train will give the statutory signals when approaching a highway crossing, and he may rely upon that assumption, but it cannot be said that he could enter upon a crossing without looking for his own safety, and be guilty of contributory negligence only in case he actually saw the approching train in time to save himself from injury. When we read this instruction in connection with those given, both for the plaintiff and the defendant, it means no more than that he will not be charged with contributory negligence unless he actually sees the train in time to avoid injury to himself, while in the exercise of that due diligence required of him by the other instructions. When this instruction is amplified and complemented by the other instructions given, it could not have had any injurious effect so far as the defendant is concerned, and particularly is this true in view of the finding of the jury in answer to the special interrogatories that the plaintiff did look and listen for approaching trains, and did exercise proper precaution for his safety before entering upon the crossing.

It follows from what we have said that there is no error in the judgment complained of, and the same is affirmed.

*Affirmed.*