H. H. HENDRICKS, *Admr. v.* MONONGAHELA WEST PENN PUBLIC SERVICE COMPANY

(No. 7064)

Submitted February 16, 1932.    Decided February 23, 1932.

*K. C. Moore,* and *Robert B. McDougle,* for plaintiff in error.

*James S. Wade* and *Russell, Hiteshew, Adams & Hill,* for defendant in error.

LIVELY, JUDGE:

Plaintiff, as administrator of the estate of his daughter, Emma, obtained verdict and judgment for fatal injuries to her in crossing accident on Camden Avenue in a surburb of the city of Parkersburg on August 1, 1928, and defendant below prosecutes error.

Plaintiff operated a truck for delivery of milk to his customers, driven by an employee, Harold Kneisley, a boy of 17 years of age. The truck began its evening deliveries August 1, 1928, and the deceased girl (age 11 years, 8 months and 15 days), her mother, and her younger brother accompanied the driver. The mother intended to do some shopping at Fort Neal on the milk route. About seven p. m. the truck approached the crossing from a covered driveway by a lumber mill, and in passing over that crossing collided with a heavy street car of defendant, resulting in the death of the girl. A photostatic copy of a map introduced at the trial will visualize the surroundings.

LUMBER MILL

LOCUST STREET

MILL

SHED

SIDING

STREET CAR LINE

MAIN TRACK

CAMDEN AVENUE

LOCUST STREET

PROPERTY LINE

PROPERTY LINE

PROPERTY LINE

PLAT SHOWING
INTERSECTION OF LOCUST STREET AND
CAMDEN AVENUE
TYGART DISTRICT    WOOD COUNTY W.Va
SHOWING
LOCATION OF STREET CAR TRACKS
WITH SWITCHES AND CROSSINGS
SURVEY AND PLAT BY J.H. ANDERSON COUNTY SURVEYOR
OCTOBER 14.1918

The negligence charged is excessive speed of the car, failure to give warning of its approach at the crossing, failure to maintain proper lookout ahead, placing freight cars on the lumber plant siding obstructing view, and operating its car so carelessly that it left the main line at the frog of a switch near the crossing and struck the truck on the switch track over which the crossing ran; all without fault on the part of the deceased girl. Defendant interposed demurrer, which was overruled, and pleaded the general issue.

There is the usual conflict in the evidence as to the speed of the car and of the truck. The car was on schedule time and was running about twenty miles per hour according to most of the witnesses. No warning signal was given by the motorman as the car approached the crossing, which he regarded as not being a public crossing, and used by the lumber plant which had closed two hours before. There is also the usual controversy as to how far the approach to the crossing could be seen by the motorman, and how far the car could be seen by the occupants of the truck as they aproached the crossing. There is much conflict in the evidence as to whether the impact occurred on the main line over which the crossing ran, or whether the car left the main line and collided with the truck on the switch track. Many disinterested witnesses say the car was on the main line at the time of the impact, and was on the main line immediately after the acident, while a less number of witnesses testify to the contrary, and refer to alleged physical facts which they say sustain their evidence. Defendant denied that it was negligent, and also relied upon contributory negligence of the driver of the truck, plaintiff's employee.

The court refused to submit to the jury the question of negligence of the driver of the truck, and limited that defense to contributory negligence, if any, of the deceased girl, telling the jury that if they found negligence on the part of defendant, then they should find for the plaintiff, unless they found that plaintiff's decedent, the girl, was guilty of contributory negligence; also telling the jury that the law presumes that a child under the age of fourteen years has not the capacity to be guilty of contributory negligence, and the burden was

on defendant to rebut that presumption. Defendant offered and was refused an instruction telling the jury that the plaintiff was the sole beneficiary, and if they believed from the evidence that the driver was in the father's employment at the time of the accident and his negligence proximately contributed to the death of the girl, then the contributory negligence of the driver was the contributory negligence of plaintiff. Other instructions based on the theory that the driver negligently entered the crossing, and did not use caution commensurate with the danger, were offered and refused. The court, as above suggested, held that the driver's contributory negligence, if any there was, could not defeat recovery, if defendant was negligent. The oral argument and much of the briefs are addressed to the alleged error of the instructions given and refused in this regard. It appears from the record that it was customary for Emma, the deceased, and other children of plaintiff (there were eight children in all) to go with the driver and assist him in making deliveries of milk. Plaintiff knew that Emma often went with Kneisley, the driver, but could not say how often. He says that she did as his other children did, and that he also permitted other children to go along and make deliveries of milk. He says he did not know she had gone on the trip that evening; she did not have his consent or denial to take that particular trip, and the mother says the girl was permitted by her to go along. There is abundant evidence that Emma had been in the habit of going along and making deliveries; and there is evidence tending to show that a few minutes before the accident she left the truck and made a delivery to, and received pay from, a customer at the lumber mill. It is evident that the father knew that Emma frequently went out on the truck for the purpose of assisting the boy in making deliveries, and thus trusted him to use commensurate care for her safety. There is nothing to show that he would not have permitted her to go along on this occasion, accompanying her mother, thus adding additional care for her safety. She went with his tacit consent; and he does not pretend to say that he would have refused the journey, had he known. The theory on which beneficiaries are precluded from recovery because

of contributory negligence is that a person should not be al-lowed to profit by his own negligence. Such is the principle stressed in *Swope* v. *Coal Co.*, 78 W. Va. 517, 520, 89 S. E. 284; *Dickinson* v. *Colliery Co.*, 71 W. Va. 325, 329, 76 S. E. 654; and kindred cases, where a parent had by direct or tacit consent placed his child in situations of danger and attempted to reap a benefit because of the death resulting therefrom. The New York courts have consistently followed the rather harsh rule laid down in *Hartfield* v. *Roper*, 21 Wend. 615, 34 Am. Dec. 273, which holds that contributory negligence of a parent, guardian, or one in *loco parentis* is imputed to a plaintiff who is *non sui juris*, and who is therefore, in law, under the charge and control of such parent, guardian or person in *loco parentis*. The courts of Maine, Massachusetts, California, Maryland, Minnesota and Indiana have followed the New York rule with modifications in important particulars. But we have not strictly followed that rule, and where the infant is *injured* and the suit is for its benefit, the contributory negligence of the parent, or one in *loco parentis*, is not a bar. *Prunty* v. *Traction Co.*, 90 W. Va. 194, 203, 110 S. E. 570. But it is otherwise where the infant is killed, and the negligent parent sues as beneficiary. *Dickinson* v. *Colliery Co.*, 71 W. Va. 325, 76 S. E. 654. Such is the rule in Ohio. See *Bellefontaine Ry. Co.* v. *Snyder*, 24 Ohio St. 670. There were two suits from the accident in the Ohio case; the first brought in the child's name for injuries, and the contributory negligence of the person to whom the parent had entrusted the child was held not to be a bar; but in the subsequent suit by the parent in his name and for his benefit, the contributory negligence of the person to whom the parent entrusted the child was held to be the contributory negligence of the parent and defeated recovery.

There is abundant authority holding that where the suit is for the benefit of the parent, the contributory negligence of the person to whom the parent entrusted the child, is attributable to the parent and bars recovery. *Pittsburgh, etc. Ry. Co.* v. *Pearson*, 72 Penn. St. 169. In *Richmond, etc. Ry. Co.* v. *Martin*, 102 Va. 201 (1903), 45 S. E. 894, the parent

had entrusted his two-horse wagon to his minor child to drive the mother and other members of the family across the country to Fredericksburg, and on the journey the boy, his mother and two younger sisters were killed on a railroad crossing under circumstances which showed negligence in entering upon the crossing. The trial court refused to instruct the jury that if they believed that the boy negligently attempted to cross the track there could be no recovery for the father suing as administrator of the estate of his seven-year old daughter who was killed in the accident. The appellate court held that the father as administrator could not recover for the death of the infant daughter, because he had placed her in the custody of another, and that the custodian had been guilty of contributory negligence, which proximately contributed to the death. Many opinions in various states, and textbooks are there discussed in the opinion, all of which are but illuminative of the principle as old as the common law, that the law does not permit a person to profit by his own negligence. That is the underlying principle of *Swope* v. *Coal Co.*, 78 W. Va. 517, 520, *supra*. The following quotation from Beach on Contributory Negligence, (3rd Ed.), sec. 131, is pertinent: "When an action for the negligent injury of an infant is brought by the parent, or for the parent's own benefit, it is very justly held that the contributory negligence of such parent may be shown in her of the action;" and in the same section: "The negligence of his agent to whom he had entrusted the child having contributed to cause the injury, and such negligence being, in contemplation of law, the parent's negligence, was held to be a bar to the action," referring to the Ohio case of *Bellefontaine* v. *Snyder, supra*. Counsel for plaintiff do not controvert this principle, but say that it applies only where it appears that "the parent for whose benefit the action for death is being maintained must have placed the child of tender years in the custody of the person whose negligent act is claimed to have proximately contributed to the injury." It is argued that the child was in the custody of the mother, and not in the custody of the driver of the truck, and therefore the father as beneficiary is not barred by the negligence of the mother. We think the evidence

justifies the conclusion that the father tacitly consented to his wife and children going in the truck. They had done so on another occasion and he had voiced no objection; and as pointed out above, the child on numerous occasions had gone on the delivery route with the knowledge of the father. Plaintiff cites *Faust* v. *Phil., etc. Ry. Co.* (Pa. 1899), 43 Atl. 329, with much reliance, which holds that "where a servant, *without authority of his master,* takes the children of his master in a wagon in which he delivers his master's goods, and the children are killed by an accident at a railroad crossing through the negligence of the railroad company and the contributory negligence of the servant, such contributory negligence does not bar recovery by the master against the railroad company for such negligence." In that case, the trial court told the jury that if they found that the father consented or tacitly consented to the servant's taking charge of the children on his trips over the route, then there could be no recovery "for in that case Heister (the servant) would have to be regarded as standing towards the children in the relation of an agent, an employee, of the father for the purpose of taking care of them," and the servant's negligence would be imputed to the father, and prevent recovery. In the instant case, the court refused any instruction embodying the principle under consideration, and gave binding instructions to the effect that if the defendant was negligent, they should find for plaintiff unless they found that the child was guilty of contributory negligence. These binding instructions ignored defendant's defense of contributory negligence on the part of the father. It was reversible error to give and refuse the instructions under consideration. Defendant has been deprived of a lawful defense.

There are many other points of error, which will perhaps be unnecessary to determine in view of the reversal on the instructions.

There was a general demurrer to the declaration and each count. The declaration fails to allege the appointment and qualification of plaintiff as administrator. This rendered the declaration had on demurrer, although there was no objection to the evidence showing such qualification and appointment

584

in fact. But that defect would only reverse the case and limit the issue on the new trial to the question of the appointment and qualification. *Moss* v. *Railway Co.*, 75 W. Va. 62. 83 S. E. 721. The reversal on other grounds enables that defect to be cured.

Error is alleged because leading questions were propounded to and answered by witnesses for plaintiff. It is sufficient to say that this point of error is conserved by an order for new trial. It is well settled that leading questions to one's own witnesses to elicit from them desired evidence is not permissible unless special circumstances warrant such questions. The questions objected to as leading come dangerously near to a violation of the rule prohibiting them.

Plaintiff's witness Melrose was allowed to say in his evidence in chief, over objection of defendant, that at some indefinite period covering six years prior to the accident he had seen one car leave the main line and go in on the Donovan Switch (where the accident occurred), and that he had seen several of them "split up, one end go up the main line and the other end go up the Donovan Switch." The theory of plaintiff was that the car in approaching the crossing left the main line and ran onto the switch where it struck the truck. The alleged former occurrences at some indefinite time within six years previous where inadmissible to show defects in the equipment, switch, or carelessness in the operation of the car at the time of the accident. The former condition of the track, switch, kind of cars then used and the speed at which they were operated on the occasions testified to by this witness are not shown or attempted to be shown. There is no similarity of circumstances shown or attempted to be shown. "To be admissible at all, however, such evidence (of other accidents, injuries or defects) must relate to accidents or injuries or defects existing at substantially the same place and under substantially the same conditions as those involved in danger or by the acts of the same person; and although the the action and caused by the same or a similar defect or several occurrences or occasions need not be exactly similar or defects existing at a remote time or at a different place, or in their details, evidence of accidents or injuries occurring

under different circumstances or conditions is not admissible.'' 45 C. J., p. 1245, sec. 808, subject, ''Other Accidents, Injuries, or Defects.'' Plaintiff would justify this evidence on the proposition that it was to weaken the evidence of defendant to the effect that it would be impossible for the car to leave the main track and go onto the switch without being derailed. This evidence on behalf of defendant had not been introduced, and even if it had been, the above requirement of similarity of equipment, conditions and circumstances would have to be shown before the evidence of Melrose would have been admissible in rebuttal. The introduction of this evidence was reversible error.

There was also opinion evidence which invaded the province of the jury. Whether the motorman was approaching the crossing in a prudent and careful manner with due regard for the safety of those who might be on the crossing, was one of the vital issues and was for the jury to determine from all the facts and circumstances shown, and not from the opinion of any witness that he did not do so. It was tantamount to permitting the witness to say that the motorman was negligent. *Colebank* v. *Garage Co.*, 75 W. Va. 389, 390; 84 S. E. 1051; Jones on Evidence, Vol. 3, p. 2478, sec. 1354.

Plaintiff introduced the mother who testified as to what occurred immediately before the accident. She had given testimony at a coroner's inquest soon after the accident somewhat different to her testimony on the trial, but said that she did not remember what she testified to at the inquest because she was then nervous, and was suffering and grieved over the loss of her child. Defendant attempted to question her with reference to specific questions and answers at the inquest, and upon objection these questions and answers were not permitted to go to the jury, and the record was vouched as to what the answers of the witness were expected to be. This result was reached after extended argument on motions and objections made a part of the record which tended to cloud the purpose and relevancy of the proffered testimony. In fact, much of the record is taken up by colloquy between counsel and their altercations which are to be deprecated. In many instances, they do not tend to enlighten the court

or jury. The main reason given by plaintiff's counsel, as we glean it from the colloquies, was that the witness had said that she did not remember what she had testified to at the inquest. We think her evidence at the inquest should have gone to the jury for what weight they might accord to it. The coroner testified that she appeared to know what she was testifying to at the inquest, else he would not have let it go to the coroner's jury.

The court instruced the jury "that it is their duty to try to decide this case as between the plaintiff and the defendant company precisely as they would try and decide it if it were a suit between two natural persons, or between two corporations and the fact that the plaintiff is a naturel person and the defendant company is an artificial person, or a corporation, should be given no weight by the jury in arriving at their verdict. Nor can any sentiment, prejudice or feeling of sympathy properly or legally have any weight with the jury in deciding the isue between the plaintiff and the defendant herein." In the closing argument for plaintiff, counsel read that instruction to the jury and commented on it in the following language: "That is the law, but that does not mean to say that at the time your brain works your heart should not beat also. This great company which has bound the State from top to bottom, from east to west and from north to south with its copper wires, is entitled to no more consideration than this father and this mother. They are entitled to no more consideration than this father who stood at the bed of that wife when she went down into the valley of the shadow of death and with pain and suffering brought forth that little infant, who was afterwards named Emma Edna Hendricks." Defendant's counsel moved the court to direct the jury to disregard that statement, and the court told the jury to disregard it, and counsel again, in his continued argument, told the jury they had a right to take into consideration the feeling of the father "when that mother went down into the valley of the shadow of death to bring forth her offspring who was kiled by the negligence of this corporation." This argument was an appeal to the sympathy of the jury, and although the court told the jury to disregard the statement, the persistence

in the appeal could not fail in making its impression on the minds of the jurors. Justice is not measured by sympathy. Justice keeps the scales balanced evenly with bandaged eyes, and is not moved by passion, prejudice or sympathy. Counsel's argument was in contravention of the instruction, and was an appeal to the jury to disregard it.

The judgment is reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*