H. H. HENDRICKS, *Admr., etc. v.* MONONGAHELA WEST PENN PUBLIC SERVICE COMPANY

(No. 7855)

Submitted April 18, 1934. Decided June 5, 1934.

Jas. S. *Wade* and *Russell, Hiteshew, Adams & Hill,* for plaintiff in error.

*McDougle & Hoff* and *Meredith, Bell & Moore,* for defendant in error.

KENNA, JUDGE:

This action for death by wrongful act was brought in the circuit court of Wood County by H. H. Hendricks, administrator of the estate of Emma Edna Hendricks, deceased, who was a child of twelve at the time of her death, against Monongahela West Penn Public Service Company, and resulted in a verdict for the plaintiff in the sum of $7,000.00. This verdict was set aside by the successor of the trial judge, who was of opinion that the record disclosed contributory negligence as a

matter of law which barred recovery, and judgment entered for defendant. From that judgment, the plaintiff in the trial court prosecutes this writ of error.

· We shall refer to the parties in their positions, respectively, in the trial court.

This is the second time this case has been in this court. A judgment for the plaintiff was reversed and the case remanded on a former writ of error decided on the 23rd day of February, 1932. See *Hendricks* v. *Monongahela West Penn Public Service Company,* 111 W. Va. 576, 163 S. E. 411. The case, as represented by the record on that writ of error, was exhaustively and ably developed. The printed record comprised 641 pages. There were fourteen separate bills of exceptions upon which, together with other parts of the record, were based twenty-one different assignments of error involving some forty-nine distinct legal questions. Thirteen instructions were tendered on behalf of the plaintiff and thirty-nine for the defendant. Nine of these instructions were given for the plaintiff and fifteen for the defendant. The entire closing argument of counsel for the plaintiff, as well as one of the arguments of counsel for defendant, were reported and are set forth verbatim in the bills of exceptions. The case was before a jury in the trial court for eight days. All of the matters assigned were examined and the recital of the facts mentioned is in no wise intended to deter the zeal of counsel for their clients, but is made merely to draw attention to the fact that it is impossible for this court always to discuss within the scope of an opinion the full minutiae of the legal questions raised upon a record, even after that record and those questions have been fully examined.

A number of the assignments of error had to do either with the introduction or exclusion of evidence or with the instructions of the court. Excepting, for the time, the single question that will be fully discussed hereafter, in our opinion, a close scrutiny of the present record discloses that the case was fully and fairly tried and presented upon correct theories adequately stated, without materially prejudicial rulings on the evidence. Where

this appears, the case will not be reversed for technical error. *Limbaugh* v. *Commonwealth,* 149 Va. 383, pt. 22, Syl., 140 S. E. 133.

It seems to us the sole question upon which the decision of this case turns is whether the driver of the truck in which plaintiff's decedent rode, was guilty of contributory negligence as a matter of law. On the former writ of error, upon proof not materially different from the proof before us now, the judgment of the trial court was reversed because of instructions given to the jury, which, in effect, told them that the negligence of the truck driver could not be imputed to plaintiff's decedent. This court was of opinion that because the father was the sole beneficiary of the recovery and because he had habitually sanctioned the little girl's riding with the driver of the truck on his milk route, the negligence of the driver, if any, became the negligence of the father, and would bar his recovery. Other errors were discussed in the opinion. Judge Lively said: "There are many other points of error, which will perhaps be unnecessary to determine in view of the reversal on instructions." On this basis, the former case was reversed and a new trial awarded. Comparison of the former record with the record now before us shows that, with certain exceptions that we believe do not materially affect the merits of the controversy, the proof in the former case was substantially the same as the proof in this case. In the maze of conflict that exists in the record, it is difficult to make a narrative statement of the circumstances of the accident, or to form anything like a description of it, without including matter that is contradicted by one side or the other. Since, on motion to set aside the verdict, the proof must be viewed most benignly in favor of the verdict, the salient facts from that viewpoint may be stated as follows:

Camden Avenue in the City of Parkersburg runs east and west. Its over all width is eighty feet. On the south side 22 feet is paved with concrete. Four or five feet north of this concrete runs the main line of defendant's track. Still further north is a side track used by the defendant company to permit the passage of its cars,

and as a loading switch by a lumber company whose plant is on the north side of Camden Avenue. North of this side track are the sheds of a lumber company which extend over and cover the north portion of Camden Avenue with a roof or shed which does not interfere with the public use of that part of the street, although that use appears to have been infrequent. To the west of the lumber shed is Orchard Street, which intersects Camden Avenue north and south. Just to the east of the lumber shed is Locust Street, which also intersects Camden Avenue, but is not used for traffic at this point north of Camden Avenue. On Locust Street, the driveway (that part of Camden Avenue covered by the lumber company's shed) running east and west emerges from the east end of the shed, continues to the east for something like 45 feet, and turns south, crossing first the side track and then the defendant's main line track to reach the paved portion of Camden Avenue. At exactly this point of crossing, and laid across Locust Street at the intersection, is a switch connecting the defendant's main line with the siding to the north of it. It is at this crossing that the accident occurred.

On the evening of the accident, Harold Kniseley, aged seventeen, regularly employed for that purpose, was making the deliveries on the milk route of H. H. Hendricks. Mrs. Hendricks, a little Hendricks boy and Emma Hendricks, plaintiff's decedent, were in the truck. Mrs. Hendricks was seated beside the driver and the girl was on her lap, while the little boy was in the back of the truck. The truck proceeded east along Camden Avenue to Orchard Street and at that point turned to the left or north, and got upon that portion of Camden Avenue lying north of the tracks. From there, it continued under the lumber company's sheds eastward on Camden Avenue, delivered a bottle of milk at the lumber yard, proceeded along the covered driveway to the crossing at Locust Street. The driver, Kniseley, testifies that at this point he slowed his truck down and practically stopped; that he approached the crossing slowly in low gear, and when he got to a point that he could view the track par-

tially, looked eastward, (to his left). At this point, the view to the west was blocked wholly or in part by a box car on the siding about 62 feet to the west of the Locust Street crossing. He says that he looked to the west but had not reached a point from which he could see the tracks in that direction. He then started to cross the crossing, and says that just as he got upon it, he was struck by defendant's car, traveling eastward. A man who was standing at the left of the motorman of the car testified that he saw the truck emerge from behind the box car at the left of the track at a time when the street car was at Orchard Street, approximately 427 feet away. In contradiction to the testimony of the motorman as a witness for the defense, there is proof, denied by him, that sometime after the accident he stated that he hoped the plaintiff would recover and that he could have prevented the accident had he been looking. There is some confusion in the evidence as to whether the truck, when struck by the street car, was on the switch track connecting the main line of the defendant with the siding at Locust Street, or was on the main track. This is not thought material, under all the circumstances. The evidence is in conflict as to whether or not a warning of its approach to the crossing was given by the street car. In resolving this conflict, we believe that the jury would have been warranted in concluding that no crossing signals were given. The speed of the street car, from the proof, could have been found by the jury to be at least twenty miles per hour. There are many conflicts in the proof that seem inexplicable and which it is not necessary to discuss nor to attempt to resolve. It is sufficient to say that in the opinion of the majority of the court, the proof nowhere furnishes a reconstruction of the circumstances of this accident upon which all reasonable minds would agree. This being so, the case presents a matter for jury determination, both as to the negligence of the defendant and as to the contributory negligence of the plaintiff. *Boggess* v. *Pub. Ser. Co.*, 107 W. Va. 88, 95, 147 S. E. 480; *Coleman* v. *R. R. Co.*, 100 W. Va. 679, 131 S. E. 563. We do not believe that the contributory negligence of the

plaintiff has been established as a matter of law. *Boggess* v. *Pub. Ser. Co.*, 107 W. Va. 88, 147 S. E. 480; *Canterbury* v. *Director General*, 87 W. Va. 233, 241, 104 S. E. 597; *City of Elkins* v. *Railway Company*, 76 W. Va. 733, 738, 86 S. E. 762; *Carnefix* v. *Railroad Co.*, 73 W. Va. 534, 538, 82 S. E. 219.

On the former writ of error, the case was reversed solely upon failure of the trial court to correctly instruct the jury. Other errors were discussed and the manner of curing them was pointed out. The case was remanded and a new trial awarded. There is no substantial or material difference in either the pleadings or the proof upon this writ of error. The pronouncements of the court on the former writ of error are the law of this case. It seems to a majority of the court that in dealing with the case as it did on the former writ of error, and particularly in expressly reversing the judgment of the trial court for a matter of error in instructions, this court necessarily held that the question presented was one for jury determination. Instructions not peremptory are properly considered only on the basis that the case is a proper one for the jury. In the former writ of error, this court so treated and dealt with a record substantially the same as the record that is now before us. Certainly, there is no material difference in the proof affecting plaintiff's contributory negligence. The majority of the court believes that by so dealing with the case, we have distinctly held that contributory negligence, as a matter of law, did not bar the plaintiff's recovery. Having so held on the former writ of error, that question cannot now be treated as open, even if a majority of the court were inclined to believe that the present record did show contributory negligence as a matter of law.

We are well aware of the peculiar respect to which an order of the trial court granting a new trial is entitled. This rule is based upon the special advantage that the trial court has in viewing the appearance and the conduct of the jurors, parties and witnesses in the trial. *Wilson* v. *Fleming*, 89 W. Va. 553, 557, 109 S. E. 810; *Flinn* v. *Henthorne*, 114 W. Va. 807, 173 S. E. 882, decid-

ed March 27, 1934. Doubtless, the rule is based in part upon the fact that granting a new trial is not, as. a rule, conclusive upon the rights of the parties to the action. The elements named are not present in this case. The trial judge did not act upon the motion to set aside the verdict. The action of the court in setting aside the verdict was based upon the opinion that contributory negligence, as a matter of law, had been shown by evidence that can hardly be materially varied in the event of a new trial. If that be so, then setting aside the verdict was, in this case, tantamount to passing final judgment upon the rights of·the parties. We, therefore, do not believe that this is a proper case for the full application of the usual rule.

The action of the circuit court of Wood County in setting aside the verdict will be reversed, the verdict will be re-instated, and judgment in favor of the plaintiff will be entered thereon in this court.

*Reversed and rendered.*

HATCHER, JUDGE, dissenting:

As I read the record, the conflict in evidence referred to in the majority opinion relates only to the negligence of the company. There is certainly no conflict as to the conduct of Kniseley, the driver of the truck. It is settled law that "the duty to look and listen before entering upon a railroad crossing requires the traveler to exercise care to select a position from which an effective observation can be made." *Robertson* v. *Ry. Co.,* 99 W. Va. 356, 128 S. E. 829. Kniseley admits he did not exercise that care. He said that he stopped the truck "on the first switch rail" for "just a few seconds" but he "couldn't see for the box cars"; that he mentioned to his companions in the truck that it was time for the street car; that he then started slowly to cross the tracks and when he had advanced a few feet, the very street car which he was expecting struck the truck. This Court has held consistently that similar conduct constituted legal negli-

216

gence. In the case of *Maynard, Admx.* v. *Ry. Co.*, 111 W. Va. 372, 373, 162 S. E. 171, the plaintiff's decedent was also driving a truck. He also stopped the truck "just for an instant" upon a storage (switch) track. He also was unable to see an oncoming train "on account of box cars." He also then started across the tracks and was struck by the train. We held that he was negligent at law. In *Robinson* v. *Ry. Co.*, 90 W. Va. 411, 110 S. E. 870 (another case in which box cars inhibited the traveler's view) a like holding was made. Similar cases could be multiplied. If there is any legal difference in the material facts of the *Maynard* and *Robinson* cases and the instant case, I do not observe the difference.

The majority opinion states that the effect of our decision on the former writ of error was to hold that plaintiff was not contributorily negligent as a matter of law, and that such holding is the law of the case. On the first writ of error the defendant made twenty-one separate assignments of error. Several points of error were grouped in some of the assignments. Under assignment No. 15, six separate errors were charged, lettered A to F, inclusive. The charge under subdivision A related to the refusal of the trial court to give a peremptory instruction in favor of defendant. The contention under that subdivision was that the truck driver was negligent as a matter of law. By reference to page 583 of the former opinion (111 W. Va. 576, 163 S. E. 411) it will be seen that the case was reversed because of the instructions given and refused by the trial court *on the very question of contributory negligence*. Those rulings were condemned *en masse* in these two sentences: "It was reversible error to give and refuse the instructions under consideration. Defendant has been deprived of a lawful defense." In the very next sentence, the opinion announced that "in view of the reversal on instructions" there were "many other points of error unnecessary to determine". In the remainder of the opinion several charges of error were discussed, and while some rulings of the trial court were disapproved, the opinion does not state that any of such rulings constituted reversible error.

So, we are confronted with this alternative: (1) the peremptory instruction (relating to the contributory negligence of the truck driver) was considered and its refusal was held to be error under the general statement in the opinion above quoted, to-wit, "It was reversible error * * * to refuse the instructions under consideration"; or (2) the peremptory instruction was not considered at all and was grouped with the "many other points of error" which the opinion stated would be "unnecessary to determine in view of the reversal on the (other) instructions". The position of the majority is untenable if the first proposition be accepted. If the second proposition (which is the more plausible) be accepted, then any inference that we did consider the peremptory instruction is excluded by the express statement quoted from the former opinion ("unnecessary to determine", etc.).

The majority opinion is reached solely through inference and argument. Yet the rule of "law of the case" should not be based on inference—"the precise question" must be "definitely and finally determined". *Windon* v. *Stewart*, 48 W. Va. 488, 37 S. E. 603. True it is, that the court used the words *res judicata* in the *Windon* case. But the opinion, pp. 490-1 (of 48 W. Va.), shows that a former decision in the same case was invoked, and that the term *res judicata* was used as synonymous with the phrase *law of the case*. The latter doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided", and is "not a limit to their power." Honnold, Supreme Court Law, p. 1494. The doctrine of *law of the case* is "much more limited in its application than that of *res judicata*". *Alerding* v. *Allison*, (Ind.) 83 N. E. 1006, 127 Am. St. Rep. 363, 368-9. The doctrine of law of the case "is weaker than *res judicata*." Justice Lummus, Boston University Law Review, November 1929 issue, page 225. So even if the former observations of this court should be taken as applying strictly to *res judicata*, for even stronger reasons should the observations apply also to *law of the case*. "Where the prior decision is limited by its express terms it will not be conclusive upon a second appeal except as to mat-

ters within the limitation." Annotation 34 L. R. A. 346. Accord: Annotation 1 A. L. R. 730-1; *Rowan* v. *Chenoweth*, 55 W. Va. 325, 47 S. E. 80; *Ins. Co.* v. *Hill*, 193 U. S. 551, 553-4, 24 S. Ct. 538, 48 L. Ed. 788. Now we either passed on the peremptory instruction on the first writ of error or we did not pass on it. If we passed on it (as one of the group of instructions referred to), we held that its refusal was error. If we did not pass on' it, then it is included in the group of points of error which we expressly stated were not passed upon. Under the above citations, the doctrine of *law of the case* has no application.

Our system of laws is a written system. The sole purpose of a written opinion is to record the law of the case. It would seem to follow that such law must of necessity be what is written in the opinion, not what is left unsaid. The manner in which courts generally regard this doctrine is expressed concisely by Mr. Black as follows: "Primarily, the effects of a decision as the law of the case is to be restricted to the propositions of law actually decided and applicable to the facts in judgment * * *. And in the usual case of a record on appeal which presents numerous assignments of error, some of which are expressly decided by the reviewing court, while others are either expressly reserved or left unnoticed, we apprehend that the conclusive effect of the decision as the law of the case must be rigorously limited to the specific points actually ruled and decided. Where, for instance, a supreme court concludes its opinion with the words so · often found in the reports, 'we deem it unnecessary to consider the other assignments of error in this case, for the reason that the conclusions already reached require a reversal of the judgment below', it must be evident that there is nothing to prevent the party from again bringing forward those undertermined issues on a second appeal, or to prevent the appellate court from giving them consideration." Black's Law of Judicial Precedents, pp. 283-4.

The West Virginia court has not heretofore regarded the rule with such diffidence. In *Wiggin* v. *Lbr. Co.*, 79

W. Va. 651, 656, 91 S. E. 532, and in *Pennington* v. *Gillaspie*, 66 W. Va. 643, 66 S. E. 1009, this court "corrected" and disregarded former rulings in the very same cases. I am unable to ignore the decisions of our own court on this subject, supported as they are by the attitude of the authorities generally. Moreover, say we wronged the plaintiff in our former decision by not expressly passing on his right of recovery; to ignore the defense of contributory negligence now would be to wrong the defendant. Two wrongs will no more make a right in this case than in any other case. Hence my dissidence.